Michael T. GAGE, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation; Ronald Mayer; and Mike Gage Chevrolet, Inc., a Delaware corporation, Defendants-Appellees.

No. 84–2426.

United States Court of Appeals,
Tenth Circuit.

June 26, 1986.

Kenneth S. Fellman of Kissinger & Lansing, P.C., Denver, Colo., for plaintiff-appellant.

Jim Clark of Baker & Hostetler, Denver, Colo., for defendants-appellees.

Before BARRETT, MOORE and ANDERSON, Circuit Judges.

BARRETT, Circuit Judge.

Michael T. Gage (Gage) appeals from an order of the district court granting General Motors Corporation's, *et al.* (GM) motion to dismiss. Our disposition requires that the facts be developed in detail.

In 1975, Mike Gage Chevrolet, Inc. (MGC), a Delaware corporation, commenced business as a Chevrolet dealership in Broomfield, Colorado. MGC held a GM franchise to sell Chevrolets. GM's Motor Holding Division was MGC's majority shareholder. Ronald Mayer and Raymond Trent, both of whom were GM employees, served on MGC's board of directors. At all times relevant hereto Gage was president of MGC, a minority shareholder of MGC, and the third member of MGC's board of directors.

In May 1981, Gage and one R.D. Spedding executed a "Memorandum of Agreement" for the sale of the dealership with Vernon Small, who was to be the new dealer. Gage did not receive authority from GM, MGC's majority shareholder, or from MGC's board of directors to enter into a contract for the sale of the dealership to Small. (R., Supp. Vol. I at 15.) Without such authority Gage could not validly contract to sell the corporation's assets. *Id.* The sale to Small was not consummated. The dealership was subsequently sold to Howard Goldstein and Robert Stream with GM's approval.

Gage subsequently sued GM in Colorado state court on June 7, 1982. Within his complaint Gage alleged that (1) GM had breached a fiduciary duty by its refusal to approve the sale of the dealership to Small; (2) GM's conduct interfered with the contractual and business relationship between Small and himself; and (3) GM's conduct breached the Dealer Sales and Service Agreement between GM and himself. Gage sought $100,000.00 in actual damages and $1,000,000.00 in punitive damages.

Gage filed a first amended complaint in state court on January 4, 1983, wherein he realleged the claims of relief set forth in his original complaint and, in addition, alleged that GM's conduct gave rise to con-

structive fraud and that he was entitled to recover all attorney fees and litigation expenses incurred in the suit.

On April 20, 1983, the state court, after finding that Gage's first amended complaint failed to state a claim for relief, entered an order dismissing it. In so doing the state court found:

4. The first claim for relief is premised on an alleged breach of fiduciary duty by reason of Defendant's failure to approve the sale of the dealerhip [sic] to Vernon Small. *Since Gage himself had no authority to sell the assets of the dealership corporation, there was no valid contract on which Defendant could act.*

5. The second claim for relief asserts that Defendants wrongfully interfered with the attempts to sell the dealership to Vernon Small. In essence, *Plaintiff claims that GM, as majority shareholder and through its employee Mayer, interfered with contractual relations between its own corporation and Vernon Small.* This Court has previously ruled that such an assertion does not state a claim for relief.

6. Further, Plaintiff's first and second claims for relief are *premised on the contention that General Motors' refusal to permit sale of dealership assets to Small was wrongful and actionable.* Under the statutes of Delaware, the state of incorporation of Mike Gage Chevrolet, Inc., as well as under the Colorado statutes, *the sale of all corporate assets, not in the ordinary course of business, cannot occur without the approval of the shareholders.* 8 Del.Ch. 1974, 271; C.R.S.1973, 7–5–112(2). The Delaware Act requires approval of a majority of the stock, while Colorado provides for approval by two-thirds of the outstanding shares. *It is therefore, apparent that by exercising its statutory right to vote on any sale of all corporate assets not in the ordinary course of business, General Motors could lawfully prevent a sale here in question to Vernon Small.* The exercise of this statutory right cannot subject a share-holder to liability to those who might benefit from such a sale. *The decision to sell or not to sell all corporate assets, not in the ordinary course of business, by statute belongs solely to the shareholders and is not reviewable by the courts.* Allied Chemical & Dye Corp. v. Steel & Tube Co., 14 Del.Ch. 64, 122 A. 142 (1923); *Baron v. Pressed Metals of America,* 35 Del.Ch. 581, 123 A.2d 848, 858 (Sup.Ct., 1956).

7. In addition, although General Motors had an absolute legal right to refuse to permit a sale of all assets of Mike Gage Chevrolet, Inc., *there is nothing in the complaint to suggest that the proposed sale to Small was ever properly presented to the shareholders for approval.* The complaint alleges that the contracts with Small were executed by Mike Gage. There is no indication that these purported contracts were ratified or even presented to the Board of Directors. *Mike Gage, as president of Mike Gage Chevrolet, Inc., as a matter of law, lacked authority to enter into the contracts here in question for the sale of all assets to Small.* 2A Fletcher, Cyclopedia of Corporations §§ 605–06. The proper procedure to have followed was to first submit the proposed sale to the Board of Directors for approval and, upon the Board's approval, sumbit [sic] the matter to the shareholders. 8 Del.Ch. 1974, § 271; C.R.S. 1973, 7–5–112(1). The complaint affirmatively shows that this was not done.

8. The third claim for relief is based on an agreement entitled "General Motors Dealer Sales and Service Agreement" executed by GM and Mike Gage Chevrolet, Inc. Plaintiff alleges that such agreement requires GM to purchase the dealership assets if it refuses to approve a sale of those assets to a third party. Because GM refused to purchase the dealership assets after failing to approve the sale to Small, Gage asserts that GM breached the Dealer Sales and Service Agreement. The Agreement itself is before the Court on the pleadings

in this case. Since the Agreement is in writing its construction and operation are issues of law for the Court to determine. *The Agreement contains no language imposing any obligation on GM to purchase the dealership assets upon disapproval of a sale. The Agreement states only that GM has an option or right of first refusal to purchase the assets if a proposed sale is disapproved.* There is no ambiguity to be construed against GM. Under the clear language of the contract, an election not to exercise the right of first refusal cannot constitute a breach of the Agreement.

(R., Supp. Vol. I at pp. 15–18 (emphasis supplied).)

On June 14, 1984, new counsel for Gage filed a second amended complaint in state court wherein Gage realleged the claims in his first amended complaint, and in addition, alleged an "interference with prospective business advantage." (R., Supp. Vol. I at p. 24.)

On March 26, 1984, the state court entered an order granting Gage's motion to dismiss his second amended complaint without prejudice after Gage's counsel stated:

For the record, plaintiff's counsel states as an officer of this court, that he was not aware of the potential federal claim until five days prior to the filing deadline for the second amended complaint, and the only reason for filing the motion to dismiss without prejudice is plaintiff's desire to bring his claim under 15 U.S.C. § 1221 *et seq.* (Federal Automobile Dealer's Day in Court Act.)

(R., Vol. I at p. 62. *See also*, Vol. III at p. 21.)

On May 21, 1984, Gage filed a complaint in federal district court. He alleged, as he had previously in state court, claims for (1) breach of fiduciary duties, (2) interference with contractual relationship, and (3) interference with prospective business advantage. In addition Gage alleged, for the first time, that GM's conduct was violative of the federal Automobile Dealers Day in Court Act (ADDCA) and Colorado's Dealer's Day In Court Act (CDDCA), C.R.S.

1973, 12–6–120, *et seq.* GM moved to dismiss for failure to state a claim upon which relief could be granted.

On September 26, 1984, the federal district court entered an order dismissing Gage's complaint for failure to state a claim upon which relief could be granted. In so doing the court found:

4. The present complaint does not state a claim for relief under the federal Dealer's Day in Court Act. *Under this statute, it is necessary to plea [sic] and prove facts showing coercion, intimidation or threats by the Defendant.* Under Delaware law, as well as under Colorado law, *General Motors, as the majority shareholder of the dealership corporation, had a legal right not to approve a sale of the corporate assets to Small and to approve the sale to other purchasers. The exercise of these legal rights cannot amount to coercion, intimidation or threats as a matter of law.*

5. The requirements of the Colorado Dealer's Day in Court Act are substantially the same as those under the federal statute *and, therefore, to sustain a claim pursuant to the state Act, the Plaintiff must plead and prove coercion, intimidation or threats.* As I have previously indicated in connection with the federal Dealer's claim, General Motors, as majority shareholder, of Mike Gage Chevrolet, Inc., had a right to reject the proposed sale of assets to Small and to direct a sale of such assets to some other party. As a result, the complaint states no claim under the state Dealer's Day in Court Act.

6. *As to the third, fourth and fifth claims for relief, it is clear that Plaintiff did not have authority to enter into a binding contract for the sale of all of the corporate assets.* Such a transaction would have to be approved by the board of directors and, even then, was subject to being disapproved by the shareholders. The only contract which was made and approved by both the directors and shareholders of Mike Gage Chevrolet,

Inc. was the one with Goldstein and Stream. *Since the ultimate authority to approve or disapprove a sale of all corporate assets did not rest with Plaintiff, any agreement which he may have had with Small was invalid and not binding on the dealership* corporation.

*In addition, the decision of Judge Kingsley dismissing Plaintiff's amended complaint in the state litgation [sic] is the law of the case and must be followed in resolving the issues presented by Defendants' motion.* Judge Kingsley's Order states that the Plaintiff's claims for breach of fiduciary duty, interference with contract and interference with business relationships fail to state claims upon which relief can be granted.

(R., Vol. I at p. 68 (emphasis supplied).)

On appeal Gage contends that: (1) as a minority shareholder his complaint stated a claim for relief against GM as the majority shareholder, for breach of fiduciary duty; (2) he had a valid claim against GM for interference with prospective business advantage; (3) he alleged a claim for relief under both the federal Automobile Dealer Day In Court·Act and the Colorado Dealer Act; and (4) the law of the case doctrine should not apply, since the complaint dismissed in state court was substantially different from the complaint dismissed in federal court.

## I.

Gage contends that the law of the case doctrine was improperly applied by the federal district court in dismissing counts three, four and five of his federal complaint, because these counts were "substantially different" from those in his earlier state court complaints. We disagree.

The federal court, in considering Gage's third, fourth, and fifth claims for relief,[1] which were identical in all material respects with his state court claims, noted that since Gage, as president of MGC, con-

tracted with Small without approval of the board of directors and the shareholders, the contract was invalid and not binding on MGC. The court further found:

In addition, the decision of Judge Kingsley dismissing Plaintiff's amended complaint in state litigation is the law of the case and must be followed in resolving the issues presented by Defendants' [GM] motion.

(R., Vol. I at p. 68.)

■ The law of the case doctrine is a restriction self-imposed by the courts in the interests of judicial efficiency. *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *Bromley v. Crisp,* 561 F.2d 1351, 1363 (10th Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). It is a rule based on sound public policy that litigation should come to an end, *Todd Shipyards v. Auto Transport, S.A.,* 763 F.2d 745 (5th Cir. 1985), and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided. *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

■ The law of the case rule applies only when there has been a final decision. *United States v. United States Smelting Co.,* 339 U.S. 186, 198–99, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *United States v. Bettenhausen,* 499 F.2d 1223, 1330 (10th Cir. 1974). The law of case rule applies, as here, when a federal district court reviews matters previously considered in state court involving the same parties. In *Gemini Supply Corporation v. Zeitlin,* 590 F.Supp. 153, 159 (E.D.N.Y.1984) (emphasis supplied) the court noted:

Although the doctrine of law of the case is not as rigid as the related doctrines of res judicata or collateral estoppel, see J. Moore, J. Lucas & T. Currier, *1 b Moore's Federal Practice,* 118 (2d Ed. 1983), *we are hesitant to upset the determination of a State court on a question of State law, absent a showing of "substantially different evidence at a*

---

**1.** Breach of fiduciary duties and interference with contractual and business relationships.

*subsequent trial, new controlling authority, or the prior decision was clearly erroneous and would result in injustice."* Handi Investment Co. v. Mobil Oil Co., 653 F.2d 391 (9th Cir.1981).

In *Barrett v. Baylor*, 457 F.2d 119, 123–24, (7th Cir.1972) the court quoted with approval Professor Moore's observations *vis a vis* the applicability of the law of the case rule in federal court where a state court established the substantive rule in litigation which the state court later dismissed without prejudice:

> Professor Moore summarizes the law in this area as follows (1B Moore's Federal Practice (2d ed. 1965) ¶ 0.404 [7]):
>
> > "It follows from what has been said that in a non-federal matter where the state substantive rule has been established in state court litigation that is still pending or has been dismissed without prejudice, the state rule constitutes the law of the case in another action in the federal court involving the same matter and the same parties, or those in privy with them, unless, of course, the rule enunciated no longer represents the state law."

■ Applying these standards we hold that the federal district court properly applied the law of the case rule in considering Gage's third, fourth and fifth claims for alleged breach of fiduciary duties and interference with contractual and business relationships. As set forth *supra*, the state court, in a final decision of April 20, 1983, dismissed these same claims. In so doing, the court found that Gage, as president of MGC, did not have the authority to enter into a binding contract for the sale of all of MGC's corporate assets and that under the laws of both Delaware and Colorado such a sale was subject to the approval of both the board of directors and shareholders.

Gage did not appeal from this state court dismissal. Rather, he opted to file in federal court "to bring his claim under" the federal Automobile Dealer's Day in Court Act. Nothing in the record before us indicates "substantially different evidence" between Gage's three state claims as presented in the state court and those presented in the federal court. Furthermore, there was no "new authority" presented to the federal court or indication "[that] the prior decision [state court] was clearly erroneous and would result in injustice." *Gemini Supply Corporation v. Zeitlin, supra.* The law of case rule was properly applied herein.

## II.

Gage contends that he alleged a viable claim for relief under both the federal Automobile Dealer's Day In Court Act and Colorado's Dealer Act. Gage argues:

> Having shown that GM's refusal to consider the sale to Vernon Small, and approval of the sale to Stream and Goldstein, constitutes a valid claim of breach of fiduciary duties owed to the minority shareholder and dealership, it is Gage's position that these breaches of fiduciary duties constitutes a series of acts amounting to threats or coercion and intimidation on the part of GM, entitling Gage to state a claim for relief under the DDCA and CDA.

(Appellant's Brief at p. 11–12.)

■ Assuming, *arguendo*, that Gage had actually established a "valid claim of breach of fiduciary duty," he has, nonetheless, failed to establish a "series of acts amounting to threats or coercion and intimidation on the part of GM," giving rise to a failure to perform in good faith. In *Zarbock v. Chrysler Corporation*, 235 F.Supp. 130, 133 (D.Colo.1964) the court stated:

> Plaintiff has brought this suit under that portion of the Automobile Dealer Franchise Act which provides a cause of action against an automobile manufacturer who fails to "act in good faith in performing or complying with any of the terms or provisions of the franchise...." 15 U.S.C. § 1222. "Good faith" is defined in the Act as:
>
> > "[T]he duty of each party to any franchise ... to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from

coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith." 15 U.S.C. § 1221(e).

Therefore, the actionable conduct must clearly involve "coercion or intimidation or threats of coercion or intimidation of the dealer."

The Act has been very recently construed in *Globe Motors, Inc. v. Studebaker-Packard Corp.*, 328 F.2d 645 (3 Cir., 1964). Here it was stated that the statute did not provide a new remedy for breach of contract but created a new cause of action. An indispensable element of this new cause of action is not the lack of good faith in the ordinary sense, but a lack of good faith in which "coercion, intimidation or threats" are at least implicit. "Lack of good faith" is not to be liberally construed.

That GM opted not to sell to Small but preferred to sell to Goldstein and Stream cannot be considered a failure to act in good faith when, as here, there is no evidence of intimidation, threats, or coercion. Even were we to assume that GM's action in this regard was arbitrary, mere arbitrariness on the part of a manufacturer does not constitute a violation of the federal act. *Colonial Ford, Inc. v. Ford Motor Co.*, 577 F.2d 106, 110 (10th Cir.1978), *cert denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corporation*, 533 F.2d 510, 514 (10th Cir.1976).

■ We hold that the district court did not err in finding that Gage's complaint did not state a claim for relief under the federal Dealer's Day In Court Act or the Colorado Dealer's Day In Court Act. As the district court observed, "General Motors, as the majority shareholder of the dealership corporation, had a legal right not to approve a sale of the corporate assets to Small and to approve the sale to other purchasers. The exercise of these legal rights cannot amount to coercion, intimi-

dation or threats as a matter of law." (R., Vol. I at p. 68.)

### III.

We have considered carefully Gage's remaining contentions and hold that they are without merit.

**AFFIRMED.**