Lloyd J. DREILING and Steven J.
Dreiling, Plaintiffs,

L.J. Dreiling Motor Company, Inc., a
Colorado corporation,
Plaintiff–Appellant/Cross–Appellee,

Podoll & Podoll; Richard B. Podoll;
Burns & Figa; Hugh A. Burns and
Phillip S. Figa, Appellants/Cross–Appellees,

v.

PEUGEOT MOTORS OF AMERICA,
INC., a Delaware corporation,
Defendant–Appellee/Cross–Appellant,

Automobile Peugeot, a French corporation; Peugeot, S.A., a French corporation and Chrysler Corporation, a Delaware corporation, Defendants–Appellees.

Nos. 85–1823, 85–1880, 85–2628
and 85–2735.

United States Court of Appeals,
Tenth Circuit.

June 28, 1988.

Rehearing Denied July 27, 1988.

Richard B. Podoll of Podoll & Podoll, pro se.

Phillip S. Figa (Hugh A. Burns with him on the briefs) of Burns & Figa, Denver, Colo., pro se.

Philip E. Johnson (Morris B. Hoffman with him on the brief) of Mosley, Wells, Johnson & Ruttum, Denver, Colo., for Peugeot Motors of America, Inc.

John B. Moorhead (Timothy R. Beyer with him on the brief) of Baker & Hostetler, Denver, Colo., for Chrysler Corp.

Before LOGAN, BARRETT, and TIMBERS[*], Circuit Judges.

LOGAN, Circuit Judge.

In 1981, Peugeot Motors of America, Inc. terminated the franchise of L.J. Dreiling Motor Co., Inc. (Dreiling) on the asserted ground that Dreiling had submitted approximately $32,000 worth of fraudulent warranty claims. Shortly thereafter Dreiling sued, seeking damages for this termination on antitrust and other grounds. On November 1, 1982, the district court dismissed Dreiling's claim under the Automobile Dealers Day in Court Act (the Dealers Act), 15 U.S.C. §§ 1221–1225, that Peugeot[1] failed to act in good faith in terminating Dreiling's dealership. Dreiling later

---

[*] Honorable William H. Timbers, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. The complaint named three members of the

amended its complaint to add Chrysler as a defendant; and soon thereafter it filed a fourth and final amended complaint asserting that the fraudulent warranty submissions were "merely a pretext, and in fact [Peugeot] engineered or participated in the creation of their ground for termination," and that the termination actually was part of a nationwide conspiracy between Peugeot and Chrysler Corporation (Chrysler) to replace existing Peugeot dealers with Chrysler dealers. Plaintiff's Fourth Verified Amended Complaint, II Supp. R. Tab 21, at 12. The complaint alleged that (1) Peugeot breached its contract with Dreiling; (2) Chrysler tortiously interfered with Dreiling's and Peugeot's contractual relations; (3) Peugeot and Chrysler violated § 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to restrain trade; and (4) Peugeot and Chrysler violated § 2 of the Sherman Act, 15 U.S.C. § 2, and § 7 of the Clayton Act, 15 U.S.C. § 18, by merging unlawfully.

In 1985 the district court granted defendants' motion for summary judgment on all claims, *L.J. Dreiling Motor Co. v. Peugeot Motors of America, Inc.,* 605 F.Supp. 597 (D.Colo.1985), and subsequently ordered Dreiling and its attorneys to pay Chrysler's attorney fees. Dreiling has appealed the summary judgment, arguing that the trial court denied sufficient opportunity for discovery, and that genuine issues of fact remained with respect to the Dealers Act claim and the claims contained in the fourth verified complaint. Dreiling and its attorneys also assert that the trial court abused its discretion in granting Chrysler attorney's fees against Dreiling and the attorneys personally. Peugeot on cross-appeal claims that the court erred in denying its motion for attorney's fees.

I

*Adequacy of Discovery*

Dreiling first argues that the "Opinion of the District Court unfairly granted summary judgment after extremely limited discovery." Dreiling's Opening Brief at 15. Defendants vigorously contest Dreiling's characterization of the extent of discovery; this characterization also is at odds with the district court's finding:

"Discovery has been extensive. Plaintiffs served hundreds of written interrogatories and requests for production of documents on Peugeot. Seventeen depositions have been taken, ten by Dreiling and seven by Peugeot. At the preliminary injunction hearing on June 26, 1981, ten witnesses testified for about six hours. Numerous affidavits and exhibits have been submitted by both sides in support of various motions. While one would not measure the worth of the Mona Lisa by the weight of the paint, it merits notice that the court file in this case is approximately fifteen inches thick, and this does not include most of the documents produced by discovery."

605 F.Supp. at 600.

We need not decide whether discovery was sufficient, as Dreiling failed to alert the district court to this issue in a proper manner. Although the Supreme Court has held that, under Fed.R.Civ.P. 56(f), "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986), this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion. *Weir v. Anaconda Co.,* 773 F.2d 1073, 1082 (10th Cir. 1985). "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no

Peugeot corporate family: Peugeot Motors of America, Inc. ("PMA"), a Delaware corporation; Peugeot, S.A. ("PSA"), a French corporation; and Automobiles Peugeot ("AP"), a French corporation. PSA owns one hundred percent of AP. PSA owns ten percent of PMA and AP owns the remaining ninety percent. Chrysler owns approximately fifteen percent of PSA. Except when differentiation is relevant, the Peugeot corporate family will be denominated simply as "Peugeot."

abuse of discretion in granting summary judgment if it is otherwise appropriate." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832–33 (10th Cir. 1986).

■ Even if we considered Dreiling's Memorandum Brief in Opposition and Dreiling's general statements at hearings about its inability to take depositions of the highest officers of Chrysler and Peugeot as affidavits,[2] *see Weir*, 773 F.2d at 1083; *Pasternak*, 790 F.2d at 833, they would be insufficient to satisfy the requirements of Rule 56(f) for a continuance to permit additional discovery. The Memorandum Brief argues only that summary judgment is not appropriate because genuine issues of fact remain. Instead of contending that additional discovery is necessary to raise a genuine issue, the brief concludes: "Plaintiff desires to get this case to trial at the earliest possible date and would request that this court immediately set a trial date...." II Supp. R. Tab 27, at 19. The other statements simply express the hope that depositions of the high officers will turn up something useful to Dreiling's case. We have held that "the party filing the affidavit must show how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984). Having failed to make this showing Dreiling cannot claim the protection of Rule 56(f), and we will accordingly "assume that both parties have had ample opportunity for discovery." *Liberty Lobby*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5.

## II

### *Genuine Issues of Fact*

We must now address whether "genuine issues" remain with respect to Dreiling's claims. The Supreme Court, in *Liberty Lobby*, held that a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248,

106 S.Ct. at 2510. The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252, 106 S.Ct. at 2512. In making the decision, the trial judge must consider all the evidence in the light most favorable to the nonmoving party. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975). Thus, the trial judge must deny motions for summary judgment when reasonable jurors might disagree, even though the judge as trier of fact would find for the moving party. On appeal, we apply this same standard, *Weir*, 773 F.2d at 1079, as we review de novo whether genuine issues exist.

### A. Breach of Contract

■ Although Dreiling argues on appeal that it "never admitted the existence of fraudulent warranty claims," Dreiling's Opening Brief at 16, the record is to the contrary. Paragraph 22 of its original Verified Complaint, I Supp. R. Tab 1, at 4, concedes that

"between the dates of March, 1980, and December, 1980, Defendant Lou Bartlett submitted fraudulent warranty claims to Defendant Peugeot Motors of America, Inc., using the forms of Plaintiff, the L.J. Dreiling Motor Company, Inc., and purportedly submitting said fraudulent warranty claims as an authorized representative of Plaintiff the L.J. Dreiling Motor Company, acting within the scope of his employ."

Although subsequent amended complaints excluded this admission, Dreiling's counsel confessed the fraud at an April 17, 1984, hearing. Moreover, counsel admitted that Dreiling "got the money for those fraudulent claims." IV Supp. R. 22.

Section 25 C.1.f. of the Dealer Agreement states that Peugeot may terminate the dealership in the event of *"any* materially false or fraudulent claim or statement relating to ... warranty repairs...." I Supp. R. Tab 1, Exh. A (emphasis added).

---

**2.** Dreiling's familiarity with Rule 56(f) is evidenced by the filing of a Rule 56(f) motion and affidavit in response to an earlier motion for summary judgment.

In the face of the admitted fraudulent warranty claims, Peugeot's termination of the dealership does not breach the dealer agreement.

■ Dreiling nevertheless contends that a genuine issue of fact still remains as to whether the wrongdoing of its agent would be imputed to Dreiling. As the district court characterized Dreiling's argument,

"Dreiling argues correctly that [Restatement (Second) of Agency] section 261 presumes an innocent third party and is inapplicable where a third party had actual notice and knowledge of an agent's wrongful conduct. There is a factual dispute as to when Peugeot gained knowledge of Bartlett's fraudulent submissions. Plaintiff alleges that in September 1980 Joseph DiStefano, a Dreiling employee, told William McMullin, the Peugeot central zone service representative, that some 'funny business' was going on in Bartlett's submission of Peugeot warranty claims. Dreiling argues that Peugeot had actual knowledge of Bartlett's fraud as of September 1980 and that his conduct after that time cannot be imputed to the dealership."

605 F.Supp. at 611. Dreiling, however, has produced no evidence demonstrating that Peugeot had knowledge of the admitted fraudulent warranties claims made before September 1980. Bartlett's actions, as an agent, in making the fraudulent claims from March to September 1980 are imputed to Dreiling, and Peugeot thus could terminate the dealership without breaching the contract. With respect to the breach of contract claim, no genuine factual issue remains.

**B. Tortious Interference with Contract Relations**

■ The Colorado Court of Appeals in *Carman v. Heber*, 43 Colo.App. 5, 601 P.2d 646 (1979), set forth the five elements for a tortious interference of contract claim under Colorado law, including the requirement that "action by the defendant [induced] a breach of the contract." *Id.*, 601 P.2d at 647. Because we have concluded that summary judgment for the breach of contract claim was appropriate, we must find *a fortiori* that there is no genuine issue that Chrysler's action induced a breach. We affirm summary judgment on this claim.

**C. Dealers Day in Court Act**

Our affirmance of summary judgment on the breach of contract claim does not, by itself, resolve whether genuine issues of fact remain for Dreiling's Dealers Act claim. The Dealers Act "creates a new cause of action, other than for breach of contract, which did not theretofore exist, in cases where a manufacturer is guilty of coercion and intimidation in its dealings with its franchise holders, regardless of whether the franchise is terminated." *Hanley v. Chrysler Motors Corp.*, 433 F.2d 708, 710–11 (10th Cir.1970). The act requires automobile manufacturers "to act in good faith ... in terminating, cancelling, or not renewing the franchise," 15 U.S.C. § 1222. The term "good faith" is defined narrowly in § 1221(e), *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901 (9th Cir.), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978), so that "actionable conduct must clearly involve 'coercion or intimidation or threats of coercion or intimidation....'" *Gage v. General Motors Corp.*, 796 F.2d 345, 351 (10th Cir. 1986) (quoting 15 U.S.C. § 1221(e)).

■ Dreiling contends that Peugeot used the fraudulent warranty claims as a pretext for terminating the dealership and that "a genuine issue of material fact exists concerning whether the franchise ... was terminated as a result of the Chrysler–Peugeot agreements." Dreiling's Reply Brief at 10. To support this argument Dreiling points to evidence that Peugeot may have known about the fraudulent warranty claims as early as September 1980 but waited until May 1981 before terminating the dealership.

Dreiling may have had a Dealers Act claim had it shown that Peugeot used its knowledge of fraudulent warranty claims and the threat of termination to coerce Dreiling into accepting higher sales objectives. *See* I Supp. R. Tab 1, Exh. G, H

(evidence of coercion). It is arguable that under § 1222 manufacturers cannot use even material breaches as pretexts for coercing or intimidating dealers. *See York Chrysler–Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 791 (5th Cir. 1971) ("The Dealers Day in Court Act contemplates a cause of action even upon the assertion of legal rights if there is a failure of good faith in the exercise thereof."). *But see Gage,* 796 F.2d at 351 ("The exercise of these legal rights cannot amount to coercion, intimidation or threats as a matter of law."). Dreiling, however, was terminated even after it had accepted the higher sales objectives, thus undercutting any argument that the threat of termination was used to coerce this acceptance.

■ Further, Dreiling argues only that Peugeot terminated its dealership so that it could be replaced by a Chrysler dealership. Under this theory, the termination was an end in itself. "Coercion or intimidation must include 'a wrongful demand which will result in sanctions if not complied with.'" *Fray Chevrolet Sales, Inc. v. General Motors Corp.,* 536 F.2d 683, 685 (6th Cir.1976) (quoting *Ship & Shore Motors, Inc. v. British Leyland Motors, Inc.,* 1974–1 Trade Cas. (CCH) ¶ 75,102 (D.N.J. 1974) [available on WESTLAW, 1974 WL 883]). As alleged, Peugeot's termination was not used to coerce or intimidate Dreiling. The allegations thus do not state a claim for relief under the Dealers Act.

### D. Antitrust Allegations

Historically, summary judgment has been disfavored in antitrust litigation. In *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court concluded that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Id.* at 473, 82 S.Ct. at 491; *see also Umdenstock v. American Mortgage & Investment Co. of Oklahoma City,* 495 F.2d 589, 592 (10th Cir.1974).[3]

In 1986, however, the Supreme Court reversed the denial of summary judgment in a major predatory pricing decision, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The Supreme Court's reversal was based on its conclusions: 1) that the predatory pricing conspiracy was so economically implausible that the defendants had no motive to engage in it; and 2) that the evidence of an agreement to enter into this conspiracy was indirect and ambiguous." *Instructional Systems Development Corp. v. Aetna Casualty & Surety Co.,* 817 F.2d 639, 646 (10th Cir.1987). Although *Matsushita* upheld the traditional view that on summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, the opinion is important because it held that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1357. Also it held that to survive a motion for summary judgment the plaintiff "must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Id.* (quoting *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984)).

---

**3.** In *Umdenstock,* we reversed summary judgment on an antitrust claim because there was inadequate opportunity for discovery. That decision went on to state, "On the record presented we cannot say with certainty that plaintiffs can prove no facts which would entitle them to the requested relief." *Id.* at 592. Dreiling has interpreted this statement to require the district courts in deciding motions for summary judgment "to determine whether other facts *could* exist," Dreiling's Opening Brief at 28 (emphasis in original), that would create a genuine issue.

Even if this were the holding of *Umdenstock,* it has been overruled by *Liberty Lobby.* The questions of sufficiency of discovery and existence of genuine issues are distinct. If the sufficiency of discovery is not at issue, the trial judge should not speculate whether additional evidence could justify a trial but instead should determine whether the present record "is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

### 1. Sherman Act § 1

Dreiling alleges that Chrysler and Peugeot violated Sherman Act § 1 by entering into a multifaceted agreement in which, *inter alia,* Chrysler agreed not to compete with Peugeot if Peugeot would terminate some of its dealers and replace them with Chrysler dealers.[4] The alleged agreement thus consisted of a horizontal component—the promise by Chrysler not to produce competing cars; and a vertical component—Peugeot's promise to hand over the dealerships to Chrysler. The district court analyzed each part separately.

■ As to the horizontal component, the district court found that Dreiling had failed to produce sufficient evidence of Chrysler's promise not to produce competing cars:

"Dreiling's allegation of Chrysler's agreement not to manufacture competing automobiles is similarly unfathomable. Dreiling's only support for this latter allegation is the following language from the preamble to the May 30, 1980 Agreement:

'Whereas CC [Chrysler Corporation] has determined that, in the light of the distinct character of the EIR [expensive import registration automobile] market, the distribution of Peugeot Vehicles via a selected number of CC dealers as herein contemplated will not be competitive with the distribution via these same dealers of the vehicles which CC currently distributed or plans to distribute during the term of this Agreement but will, in fact, strengthen these dealers to the benefit of CC and said dealers;....'

But this is no *agreement* not to compete; rather, it is a statement of the *fact* that Chrysler and Peugeot did not then compete."

605 F.Supp. at 602 (emphasis in original).[5]

In *Gibson v. Greater Park City Co.,* 818 F.2d 722 (10th Cir.1987), this circuit distilled from *Matsushita* a two-part evidentiary test for summary judgment in antitrust conspiracy cases:

"(1) is the plaintiff's evidence of conspiracy ambiguous, *i.e.,* is it as consistent with the defendants' permissible independent interests as with an illegal conspiracy; and, if so, (2) is there any evidence that tends to exclude the possibility that the defendants were pursuing these independent interests."

*Gibson,* 818 F.2d at 724. As to the first part, Dreiling's evidence of a horizontal conspiracy not to compete is, at best, ambiguous. As the district court correctly observed, the preamble to the May 30 agreement reflected the absence of contemporaneous competition between Peugeot and Chrysler, not an intent to suppress competition in the future. As to the second part of the test, the preamble is perfectly consistent with the defendants' permissible interests in a joint venture, and Dreiling adduces no additional evidence that "tends to exclude the possibility that the defendants were pursuing these independent interests." *Id.*

■ Dreiling's appeal of the § 1 summary judgment then must rise or fall on whether genuine issues remain as to the second part of the Chrysler–Peugeot agreement, regarding Peugeot's alleged promise to "terminate existing Peugeot dealerships to protect Chrysler dealerships who were

---

4. The Burns and Figa law firm argues that the district court erred in granting Chrysler summary judgment because "Chrysler produced no evidence or affidavits that it played no role in Dreiling's termination." Burns & Figa Opening Brief at 14. The Supreme Court has recently rejected this argument in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), finding "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original).

5. The district court also concluded that Dreiling lacked standing to object to the alleged Chrysler–Peugeot agreement. It stated:

"Furthermore, Dreiling's alleged injury, its termination as a Peugeot franchisee, could not have been caused by these alleged horizontal market division aspects of the agreement between Chrysler and Peugeot." 605 F.Supp. at 602. We do not reach the standing issue, because we agree that Dreiling has not established a genuine issue of horizontal conspiracy.

to acquire the Peugeot franchise...." Fourth Verified Amended Complaint, II Supp. R. Tab 21, at ¶ 7–8. In analyzing whether the evidence of this theory supports a triable claim, we agree with the district court that the rule of reason governs this part of the agreement. *See* 605 F.Supp. at 604. *"Per se* rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive." *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). The substitution of one distributor for another is not manifestly anticompetitive. *See Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283, 287 (6th Cir.), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963); ABA Antitrust Law Section Monograph No. 9, 26–27; *see generally*, Posner, *The Next Step in Antitrust Treatment of Restricted Distribution Per Se Legality*, 48 U.Chi.L.Rev. 6 (1981). If a manufacturer " 'decides on his own to substitute one dealer for another ... his decision to sell exclusively to a new dealer does not amount to an antitrust "conspiracy" with the latter....' " *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030 (2d Cir.) (quoting *Bowen v. New York News, Inc.*, 522 F.2d 1242, 1254 (2d Cir.1975), *cert. denied*, 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed. 2d 177 (1976)), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979).

■ The district court found that Peugeot had not promised to replace existing Peugeot dealers with Chrysler dealers, 605 F.Supp. at 605–07, and regarding the agreements that Chrysler and Peugeot did make, the court found "neither an anticompetitive intent nor an anticompetitive purpose." *Id.* at 605. The district court correctly noted that § 1 of the Sherman Act prohibits agreements with either the purpose or effect of restraining competition unreasonably. 605 F.Supp. at 608; *see United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 224 n. 59, 60 S.Ct. 811, 845 n. 59, 84 L.Ed. 1129 (1940); L. Sullivan, *Antitrust* at 194 ("[I]f either the purpose or effect of a practice evaluated under the rule of reason is sufficiently adverse to competition to outweigh any benefits, the conduct is deemed unreasonable."). In reviewing the issue de novo, we conclude that summary judgment is appropriate.

■ In its complaint, Dreiling alleges that defendants restrained the sale and purchase of expensive import registration automobiles (EIRs) within Colorado and throughout the United States. But Dreiling has not demonstrated how replacing Peugeot with Chrysler dealers would restrain trade in the EIR market. As to effect, Dreiling presented no plausible theory of how the dealer replacement would restrain either the manufacture or distribution of automobiles. "Dealings between a manufacturer and its agents may be arbitrary, unfair, or lacking in good business judgment, but, without more, they will not violate the Act." *Kestenbaum v. Falstaff Brewing Corp.*, 575 F.2d 564, 571 (5th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979). The record contains no evidence that the dealer replacement would reduce competition in either manufacturing or sales. *Cf. Bowen*, 522 F.2d at 1254–56 (newspaper illegally agreed with exclusive franchise dealers to eliminate competition from nonexclusive dealers).

Just as Dreiling's counsel has failed *ex post* to enunciate a plausible theory of anticompetitive effect, the record does not show that the agreement was motivated by any anticompetitive purpose. Dreiling complains that its inability to show purpose is due to the district court stay of discovery, which "allowed *absolutely no discovery* against Chrysler...." Dreiling's Opening Brief at 4 (emphasis in original). While summary judgment should rarely be granted prior to discovery against one defendant, we again feel bound to consider the record as it stands absent a Rule 56(f) affidavit. Moreover, Dreiling's failure even to assert a plausible anticompetitive effect leads us to agree with the district court that the possibility that proposed discovery of high-ranking Peugeot and Chrysler representatives would reveal an anticompetitive purpose "is so remote that it cannot defeat this grant of summary judgment...." 605 F.Supp. at 609.

In sum, we discern no genuine issues of fact regarding either horizontal or vertical restraints in violation of Sherman Act § 1.

## 2. Sherman Act § 2 and Clayton Act § 7

■ Dreiling contends that Chrysler's acquisition, in 1978, of approximately fifteen percent of PSA's stock constitutes a combination by Chrysler and Peugeot to monopolize the EIR market in Colorado and the United States, in violation of Sherman Act § 2 and Clayton Act § 7. This court set forth the four elements of a § 2 claim in *Olsen v. Progressive Music Supply, Inc.,* 703 F.2d 432 (10th Cir.), *cert. denied,* 464 U.S. 866, 104 S.Ct. 197, 78 L.Ed.2d 172 (1983): (1) The plaintiff must demonstrate a combination or conspiracy to monopolize; (2) there must be overt acts done in furtherance of the combination or conspiracy; (3) the defendants must have a specific intent to monopolize; and (4) the combination or conspiracy must have an appreciable effect upon commerce. *Id.* at 436–38.

■ We agree with the district court that Dreiling has not shown an appreciable effect upon commerce. Although it has adduced evidence of its own termination, Dreiling has not produced any evidence of a wide-scale substitution of Chrysler–Peugeot dealers for other existing Peugeot dealers. Dreiling similarly lacks even a scintilla of evidence to support its assertion that this lawsuit dissuaded Chrysler and Peugeot from pursuing the alleged plot to terminate the existing Peugeot dealers. The case reduces to the termination of Dreiling, and only Dreiling. We do not believe, under the relevant Supreme Court standards, that the replacement of one dealer constitutes a sufficient impact upon commerce to state a § 2 claim. *See United States v. Yellow Cab Co.,* 332 U.S. 218, 225, 67 S.Ct. 1560, 1564, 91 L.Ed. 2010 (1947); *Times–Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953).

■ We also affirm the district court's summary disposition of the Clayton Act count. Having chosen the sale of EIRs as the line of commerce, Dreiling must come forth with evidence both of Chrysler's presence as a competitor in the EIR market and of market power by Peugeot and/or Chrysler. Dreiling failed not only to discharge this burden but also to suggest how additional discovery and a full trial would develop these critical elements.

## III

### *Attorney's Fees*

■ Despite the American rule that each party shall bear its own litigation expenses, federal courts possess the inherent authority to "assess attorneys' fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed. 2d 703 (1974)). This sanction may attach in any bad-faith lawsuit, whether unreasonably filed or improperly continued:

> "The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. '"[B]ad faith" may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.' *Hall v. Cole,* 412 U.S. 1, 15 [93 S.Ct. 1943, 1951, 36 L.Ed.2d 702] (1973)."

*Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Both client and counsel may be held liable for attorney's fees. *Id.* Recognizing that illiberal use of the sanction might discourage the zealous advocacy of difficult cases, we trust the imposition of attorney's fees to the cautious discretion of the district court, *Mertsching v. United States,* 704 F.2d 505, 506 (10th Cir.) (per curiam), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983), after fair notice to the parties and a hearing on the record. *Roadway Express,* 447 U.S. at 767, 100 S.Ct. at 2464; *Rosewitz v. Latting,* 689 F.2d 175, 178 (10th Cir.1982). We note, however, that the bad-faith exception to the

general rule that attorney's fees may not be recovered requires more than a showing of a weak or legally inadequate case, and more than a finding of negligence, frivolity, or improvidence. *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981). It is a narrow exception indeed. With this in mind we review the district court's assessment of fees against Dreiling and its counsel, Burns & Figa and Podoll & Podoll, in favor of Chrysler and its refusal to assess such fees in favor of Peugeot.

Peugeot made its claim for attorney's fees after the district court had decided all claims in its favor on summary judgment. The district court carefully weighed its interests in being free of frivolous claims and in being open and amenable to consider creative claims put forth in good faith. Noting that the court itself had recommended Dreiling retain counsel experienced in antitrust law, and complimenting the reputation and experience of Burns & Figa, who were retained before preparing the third and fourth amended complaints, the court ruled, "I can't say that an attorney in good faith reviewing this matter would not have proceeded." V.Supp.R. 40. It therefore denied Peugeot's motion.

But at the same time the court granted Chrysler's motion for attorney's fees, finding that adding Chrysler as a defendant was "not well-grounded in fact, the case [was] not warranted by existing law, or any good faith argument for the extension, modification or reversal of existing law and rather it was interposed for improper purposes." V.Supp.R. at 36–37. It declared that Chrysler's joinder "was a last-minute desperate attempt to bring in somebody to try to keep the ship afloat and get some walking money into the case...." *Id.* at 36.

■ We hold the district court correctly denied fees to Peugeot but wrongfully granted them to Chrysler. We believe, as the court stated with respect to Peugeot's request, that a reasonable attorney who faced these facts might well have filed the suit. The reassertion of the Dealers Act and interference-with-contract claims in connection with an alleged conspiracy was questionable in light of the court's having already dismissed, in a different context, the Dealers Act and contract claims against Peugeot; they were not, however, precluded by the earlier dismissal.

Further, we agree with the district court that Dreiling's antitrust claims against Peugeot were not so frivolous as to justify attorney's fees as a sanction. But we cannot agree with the district court that the antitrust claims against Chrysler were inherently less meritorious than the antitrust claims against Peugeot. The court itself approved the addition of Chrysler as a party defendant, after Chrysler's agreements with Peugeot had been mentioned from the outset, and the court suggested obtaining experienced antitrust counsel like Burns & Figa. In fact, Dreiling's third and fourth amended complaints, asserting antitrust claims against Chrysler and Peugeot based upon the several agreements between those defendants, seem to us considerably more meritorious on their face than what had been earlier alleged against Peugeot alone. Because the legal essence of the antitrust claims was that Peugeot and Chrysler combined or conspired to restrain trade, we believe that the attorney's fee award either should have been granted in favor of both defendants or in favor of neither.

The principal infirmity of the antitrust claims came about not at the time of pleading but later, when Dreiling by its counsel failed to support its request for additional discovery with Fed.R.Civ.P. 56(f) affidavits, and when counsel misconceived the burden of production of evidence to avoid summary judgment. These defalcations, however, became clear only after *Matsushita, Celotex* and *Liberty Lobby,* each of which were decided after the court's grant of summary judgment. As noted, *Matsushita* heightened the antitrust plaintiff's burden with its holding that summary judgment is proper for a defendant when the evidence is indirect, ambiguous and consistent with defendant's permissible interest. *Liberty Lobby* clarified that the mere existence of some factual dispute will not defeat a motion for summary judgment; the court must ask itself whether a fair-minded jury

could return a verdict on the evidence presented. Finally, *Celotex* held that a party defendant moving for summary judgment need not support its motions by affidavits or other evidence negating the plaintiff's claim. These principles, freshly enunciated by the Supreme Court, have played an important part in our upholding the summary judgments by the district court. Although we do not wish to imply that these claims necessarily should have survived summary judgment under the state of the law at that time, it is only through the benefit of hindsight that the claims, and counsel's actions, could appear to be so unreasonable as to justify sanctions.

Considering the narrowness of the exception to the American rule against attorney's fee awards, that not even objectively frivolous claims advanced in subjective good faith justify fee awards, we must reverse the district court's award of Chrysler's fees while affirming its denial of fees to Peugeot.

The judgment is AFFIRMED in all respects except the award of attorney's fees to Chrysler. As to that aspect it is REVERSED.