937 F.2d 616
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Jackie SEARL, an individual and doing business as For Sale
by Owner Magazine and doing business as Limited
Commission Real Estate Agency, Plaintiff-Appellant,
v.
The OGDEN BOARD OF REALTORS, Charles H. Anderson, Robert
Penton, James Molgard, Realty World Abide, Charles
Jones, Network Realty and Bruce Killian,
Defendants-Appellees.
 No. 89-4137.
 United States Court of Appeals, Tenth Circuit.
 July 15, 1991.
 
 Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BRETT, District Judge.*
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Jackie Searl, individually and as proprietor of For Sale by Owner magazine and Limited Commission Real Estate Agency (LCRE), brought an action alleging that defendants, realtors and real estate associations, conspired to induce others to boycott plaintiff's businesses in violation of Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1, and Utah's version of the Sherman Act, Utah Code Ann. Sec. 76-10-914(1).[1] Plaintiff also asserted several tortious interference with contract claims. The district court granted defendants' motions for summary judgment on all claims.
 
 
 2
 In 1984, plaintiff began publishing For Sale By Owner. The magazine, which is distributed free of charge to the public, contains photographs and descriptions of real estate for sale in the greater Ogden, Utah area. Those attempting to sell real estate pay to advertise their property in the magazine. Businesses involved in the local real estate industry also pay to advertise in For Sale by Owner.
 
 
 3
 In 1985, plaintiff organized Limited Commission Real Estate (LCRE), a discount real estate brokerage business. For a commission substantially below what other local brokerage firms charge, LCRE helps homeowners sell residential real estate.
 
 
 4
 A great deal of animosity developed between plaintiff and defendants soon after she organized For Sale By Owner and LCRE. Defendants complained that plaintiff engaged in deceptive advertising practices; plaintiff complained that defendants intended to run her out of business. Ultimately plaintiff filed the instant action, alleging that defendants violated antitrust law by conspiring to boycott anyone doing business with her. She further alleged that defendants intentionally interferred with contractual relations between plaintiff's businesses and their clients, a prospective employee and LCRE, and For Sale By Owner and its commercial advertisers. After the district court granted defendants' summary judgment motion as to all claims, plaintiff appealed to this court.
 
 
 5
 * We review a summary judgment order de novo, applying the same standard applied by the district court. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). In opposing defendants' motion for summary judgment, plaintiff relies heavily on her own affidavit and deposition. Most of the allegations contained in these documents, however, do not comport with the dictates of Fed.R.Civ.P. 56(e). Under that rule, a party opposing a well supported motion for summary judgment "must do more than make conclusory allegations, it 'must set forth specific facts showing that there is a genuine issue for trial." ' Dart Indus., Inc. v. Plunkett Co., 704 F.2d 496, 498 (10th Cir.1983) (quoting Fed.R.Civ.P. 56(e)); First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 288-90 (1968). Affidavits must be made upon personal knowledge and must set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e). Accordingly, "[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in an affidavit." 6 J. Moore & J. Wicker, Moore's Federal Practice p 56.22 at 56-743 to 56-746 (2d ed. 1988) (footnote ommitted).
 
 
 6
 After a careful review of the appellate record, we find that only the following allegations made by plaintiff are supported as required by Rule 56(e): (1) Defendants sent numerous letters complaining about plaintiff to the Utah Division of Real Estate; these letters were placed in the Ogden Board of Realtors' (OBR) reading file, thereby making them available to other realtors; (2) when asked about LCRE by a job seeker, the president of the OBR responded "scratch that one off your list," Addendum to Brief of Appellant, Ex. 10 at 64; (3) the OBR dismissed several complaints filed by plaintiff; (4) the other students in plaintiff's brokerage class refused to sit by her; and (5) Robert Penton convinced a real estate business not to advertise in For Sale By Owner.
 
 
 7
 In reviewing whether these allegations preclude a grant of summary judgment in this antitrust conspiracy case, we are governed by the standard established in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). Under this standard, "if the evidence is as consistent with permissible independent business interests as with an illegal conspiracy, then the plaintiff fails to create a fact issue on the existence of a section one conspiracy unless the ambiguity is negated by evidence tending to exclude the possibility that the defendants were pursuing independent interests." Key Fin. Planning Corp. v. ITT Life Ins. Corp., 828 F.2d 635, 639 (10th Cir.1987) (emphasis in original). Accord Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373, 1380 (10th Cir.1988); Gibson v. Greater Park City Co., 818 F.2d 722, 724 (10th Cir.1987). Applying this standard, we conclude that the district court properly granted summary judgment in favor of defendants.
 
 
 8
 The letters written to the Utah Division of Real Estate are consistent with a realtor's interest in reporting seemingly misleading advertisements and the OBR's desire to protect the use of the term "realtor."[2] The letters were placed in the OBR reading file consistent with the OBR's policy of keeping its members abreast of issues affecting their professional association. See Brief of Appellees at 30.
 
 
 9
 Likewise, the OBR's president's remarks about LCRE and the OBR's handling of plaintiff's complaints are consistent with legitimate business interests. The OBR must be able to review and dispose of complaints if they are procedurally defective or they lack merit. The president must be able to offer his honest opinion, when that opinion is sought, about job opportunities in the local real estate market. Plaintiff has offered no evidence tending to exclude the possibility that defendants were pursuing legitimate business interests in taking the foregoing actions.
 
 
 10
 The fact that plaintiff's brokerage classmates ostracized her, though not justified by legitimate business interests, provides no evidence of the existence of a conspiracy to boycott plaintiff. Several of plaintiff's classmates are defendants in this action, and given the friction between the parties in this case, it is not surprising that they were less than friendly when they discovered her identity. Though rude, their actions do not support the existence of a conspiracy to violate antitrust laws.
 
 
 11
 Finally, we do not view Penton's statement that he forced Mountain View Title to cancel its contract with For Sale By Owner, standing by itself, to be evidence of a conspiracy to boycott plaintiff's businesses. As discussed in Part II below, his statement that "he was responsible for getting the ad pulled from Mountain View Title Company," Addendum to Brief of Appellant, Ex. 9 at 280, undoubtedly raises an issue of fact regarding the intentional interference with contract claim. This statement of one individual's unilateral action, however, does not evince a "contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce...." 15 U.S.C. Sec. 1.[3]
 
 II
 
 12
 Plaintiff next appeals the district court's summary judgment order dismissing her tortious interference claims. We affirm the district court's judgment on this issue as to all defendants except Robert Penton.
 
 
 13
 Utah recognizes the tort of intentional interference with prospective economic relations. See Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982). To recover damages under this tort, a plaintiff must prove: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." Id.
 
 
 14
 Plaintiff's complaint and briefs on appeal contain numerous allegations of contractual interference that are not supported as required by Rule 56(e). Plaintiff does properly support, however, the allegations underlying the claim against the president of the OBR and Robert Penton.
 
 
 15
 At plaintiff's behest, Brian Mason visited the president of the OBR ostensibly seeking advice on employment opportunities in the local real estate market. When Mason asked about LCRE, the president told him to "scratch that one off your list," Addendum to Brief of Appellant, Ex. 10 at 64, because LCRE did not offer adequate training and he knew that other "cut-rate commission brokerages" had gone out of business. See Brief of Appellee at 32-33. Despite this advice, Mason went to work for LCRE.
 
 
 16
 The record contains no evidence indicating that the OBR president made these remarks for an improper purpose; he merely responded to a question with his honest opinion. Moreover, plaintiff does not identify any injury resulting from the statement--Mason had already decided that he was going to work for LCRE when he asked the question and the president's remarks did not change his mind. Accordingly, the district court properly granted summary judgment on this claim.
 
 
 17
 Plaintiff's claim against Robert Penton arises out of For Sale By Owner's $35.00 a month advertising contract with Mountain View Title. After two months, Mountain View cancelled the contract. In plaintiff's affidavit and deposition, she testified that Penton told her that he caused Mountain View to cancel the contract. Penton admits to making this statement. Addendum to Brief of Appellant, Ex. 8 at 65.
 
 
 18
 Faced with this evidence, we must reverse the district court's grant of summary judgment in favor of Penton. Our conclusion is not altered by Penton's testimony that his statement to plaintiff was untrue and was made only to hurt plaintiff's feelings. Nor is it altered by the testimony of Michael Hendry, president of Mountain View, that no one spoke with him regarding his advertisement in For Sale By Owner and that he cancelled it because of a lack of business. I R. tab 167. Such testimony simply raises a genuine issue of material fact to be decided at trial.
 
 
 19
 In conclusion, the district court's grant of summary judgment on all antitrust claims is AFFIRMED as to all defendants. The district court's grant of summary judgment in favor of Robert Penton on plaintiff's claim for tortious interference with prospective economic relations is REVERSED and REMANDED. The district court's grant of summary judgment on all other tortious interference with contract claims is AFFIRMED.
 
 
 
 *
 The Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Utah's Antitrust Act provides that "The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes...." Utah Code Ann. Sec. 76-10-926. Accordingly, we construe Utah's Antitrust Act as applying the same standards and as forbidding the same actions as the Sherman Act
 
 
 [2]
 "Realtor" is a federally registered collective membership mark. Brief of Appellees at 4 n. 5
 
 
 [3]
 During plaintiff's deposition, she indicated that Penton took credit for the cancellation of Mountain View Title's advertisement. See Addendum to Brief of Appellant, Ex. 9 at 280. This version of accounts is corroborated by Penton's own deposition. See id., Ex. 8 at 65 ("I told her that I was the one that got him to drop the ad."). In plaintiff's affidavit, however, she states that Penton said, "My broker and I" caused the cancellation. Id., Ex. 3 at 4. In her brief on appeal, plaintiff reverts back to her original version and states that "The vice-president-elect of the OBR ..., Penton, told Searl he had caused FSBO advertiser Mt. View Title to cancel its advertising contract...." Brief of Appellant at 27 (emphasis added). Finally, in her reply brief, plaintiff repeatedly states that Penton got Mountain View Title to cancel the advertisement. Reply Brief of Appellant at 3, 12-13, 21-23, 25. Because the confusion on this issue was created by plaintiff, and because she repeatedly argues in her briefs before this court that Penton alone caused the cancellation of the advertisement, we have assumed that Penton, and not his broker, is alleged to have caused the cancellation of the Mountain View contract