**BRODERICK INVESTMENT COMPANY, a partnership and successor to Broderick Wood Products, Inc.; The Colorado National Bank of Denver, as trustee; and The First Interstate Bank of Denver, N.A., as trustee, Plaintiffs,**

v.

**The HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

**No. 86–Z–1033.**

United States District Court, D. Colorado.

Dec. 19, 1989.

---

R. Brooke Jackson, Anne C. Stark, Rosalee Rodda, Holland & Hart, Denver, Colo., for plaintiffs.

Thomas L. Roberts, Susan T. Smith, JoAnne M. Zboyan, Pryor, Carney & Johnson, P.C., Englewood, Colo., for defendant.

## ORDER

WEINSHIENK, District Judge.

This lawsuit represents a dispute between plaintiff insureds and defendant insurance company over whether and to what extent the comprehensive general liability insurance policies issued to a wood treatment facility in Denver, Colorado, cover the cost of cleaning up hazardous waste at the plant site. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

Broderick Wood Products, Inc., operated a wood treatment facility in Denver, Colorado, from the 1940's until 1983, when the plant closed. Wastes from the treatment process were stored in open, unlined pits in the ground near the treatment plant. Hazardous materials from the pits, the plant, and other areas at the site have seeped into the groundwater. In 1986 the Environmental Protection Agency (EPA) filed a complaint against and simultaneously entered into a Partial Consent Decree with these same plaintiffs. *United States of America v. Broderick Investment Company, et al.,* Civil Action No. 86–Z–369. As part of the decree plaintiffs agreed to clean up the site of the former plant, once studies to determine the nature of the required cleanup are completed.

Hartford Accident and Indemnity Company (Hartford) issued primary comprehensive general liability insurance policies to Broderick Wood Products, Inc., and its successor, Broderick Investment Company, from 1976 until 1984. Hartford umbrella policies also covered all years except 1976. However, Hartford denied that its policies covered the cost of defending against the EPA or of cleaning up the polluted site. This lawsuit resulted.

This matter was first before the Court on October 3 and 4, 1989, for a pre-trial evidentiary hearing on interpretation of Hartford's insurance policies' language. At the conclusion of that hearing, the Court made findings of fact and conclusions of law which were incorporated therein as if fully set forth. This matter was then tried on October 16, 1989, through October 27, 1989, before a jury of six duly sworn to try the issues therein, the Honorable Zita L. Weinshienk, Judge, presiding.

The trial proceeded to conclusion on the jury issues, and the jury rendered its Special Verdict. The jury found only one occurrence per year and liability for each of the years 1976 through 1983. Additionally, the jury found that 5% of the costs of investigation and cleanup of plaintiffs' own property is not necessary or related to protection of groundwater.

After the jury verdict, this matter was again before the Court on November 2, 1989, for hearing on several remaining legal issues. The Court heard arguments of counsel and considered the additional briefs and exhibits.

The first issue on which the Court heard argument concerned which of Hartford's policies, if any, were triggered by the occurrences of property damage on the

Broderick Wood Products site. The Court adopts the "continuous trigger" method used by the court in *Dayton Independent School District v. National Gypsum Co.*, 682 F.Supp. 1403 (E.D.Tex.1988). *See also Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981). The Court finds that unexpected and unintended property damage occurred in each of the years 1976 through 1983. Therefore, all Hartford policies issued in those years are "triggered" and applicable.

█ Secondly, the parties addressed the effect of amendatory endorsements on the amount of coverage available under the 1982 and 1983 policies. The amount of coverage under the other applicable policy years was not in dispute. Plaintiffs argued that the 1982 and 1983 endorsements replaced only the primary policies. Defendants argued that the endorsements replaced both the primary and umbrella policies. The 1982 endorsement states, "Attached to and forming part of Policy No. 34 C 712909 [the primary policy] and 34 RHU EG8743 [the umbrella policy] issued by The Hartford Insurance Group", while the 1983 Amendatory Endorsement provides, "Attached to and forming part of Policy No. 34 C HC9651 [the primary policy] issued by Hartford A & I Insurance Company."

After careful consideration, the Court concludes that the endorsements should be read literally. Therefore, the amendatory endorsement to the 1982 policy replaces both the primary and umbrella policies, providing total coverage under the 1982 policy of $1,000,000 per occurrence. The amendatory endorsement to the 1983 policy applies to and replaces only the primary policy. Thus, total coverage under the 1983 policy is $1,000,000 per occurrence under the primary policy plus $2,000,000 per occurrence under the umbrella policy for total coverage of $3,000,000.

█ The third issue addressed was whether or not liability for the damages should be apportioned among several liability carriers, because of the "other insurance" clauses in the insurance contracts. The Broderick property was insured by Hartford. Colorado National Bank of Denver and First Interstate Bank of Denver, N.A., (trustee banks) also had various insurance policies on their trust properties, but the policies did not specifically name the Broderick property. Despite their insistence that their policies did not cover the Broderick property, the liability carriers for the trustee banks' trust departments settled with the plaintiffs and were dismissed from this case on November 4, 1988. Funds from that settlement are being held in escrow.

█ "Other insurance" clauses, such as those in Hartford's policies, are meant to prevent double recovery where more than one insurance company is obligated to respond to a claim. This type of clause assures that there will be no windfall on the part of the insured. *See, e.g., Childs v. New Jersey Mfrs. Ins. Co.,* 108 N.J. 506, 531 A.2d 723, 727 (1987). In this case, with the large anticipated clean-up costs, the Court is confident that plaintiffs will not be enjoying any windfall. In fact, the Court would not be at all surprised if the entire escrow fund and all the funds due under the Hartford policies are insufficient to pay for the necessary cleanup. Furthermore, "other insurance" clauses may not be used as a basis to allocate part of the loss to the insured. *See Dayton Independent School District,* 682 F.Supp. at 1411.

Plaintiffs and defendant, in settling two other claims between them in this case, have agreed that the funds received in settlement from the other insurers will be applied first to the cleanup. Only if the cleanup exceeds the sum of the settlement funds, may plaintiffs begin to use the Hartford coverage amounts. For all of the above reasons, the Court concludes that apportionment among insurance carriers is not appropriate in this case.

Accordingly, it is

ORDERED that judgment is entered in favor of plaintiffs, Broderick Investment Company, Colorado National Bank of Denver, and First Interstate Bank of Denver, N.A., and against defendant declaring coverage under all policies except the 1984 policy. It is

**574**

FURTHER ORDERED AND DE-CLARED that each of defendant's 1976 through 1983 policies covers the costs of cleaning up the Broderick Wood Products site. It is

FURTHER ORDERED AND DE-CLARED that the 1984 policy does not cover any of the costs of the cleanup. It is

FURTHER ORDERED that the maximum amount of coverage available under the 1982 policy is $1,000,000 total. It is

FURTHER ORDERED that the maximum amount of coverage available under the 1983 policy is $1,000,000 in primary coverage plus $2,000,000 in umbrella coverage, for a total coverage of $3,000,000. It is

FURTHER ORDERED that defendants may have until January 3, 1990, to respond to Plaintiffs' Brief Regarding Recovery Of Defense Costs (Responding To EPA Suit), Pre–Judgment Interest (On Plaintiffs' Judgment In This Suit) And Attorney's Fees, said brief to be no longer than ten pages, double-spaced.