**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Plaintiff–Appellee/Cross–Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, d/b/a CNA Insurance, Defendant–Appellant/Cross–Appellee.**

Nos. 90–1320, 91–1201.

United States Court of Appeals, Tenth Circuit.

June 3, 1994.

Timothy J. Flanagan of Kelly, Stansfield & O'Donnell (Daniel M. Fowler of Fowler, Schimberg & Cowman, and James R. McCotter of Public Service Co. of Colorado, Denver, CO, with him on the brief), for plaintiff-appellee/cross-appellant Public Service Co. of Colorado.

Susan Smith Fisher, P.C., Littleton, CO, for defendant-appellant/cross-appellee Continental Cas. Co. d/b/a CNA Ins.

Before SEYMOUR, Chief Judge, HOLLOWAY, Circuit Judge, and ROGERS,* District Judge.

HOLLOWAY, Circuit Judge.

Plaintiff-appellee Public Service Company of Colorado (PSC) brought this suit for declaratory relief and damages against defendant-appellant Continental Casualty Co., d/b/a CNA Insurance (CNA), seeking a declaratory judgment that an insurance policy issued by CNA to PSC covers the liability and expenses incurred by PSC in defending and settling a civil action entitled *Waranch v. Public Service Company of Colorado,* Civil Action No. 77–Z–491 (D.Colo.) (the Waranch action). CNA appeals the district court's entry of partial summary judgment in favor of PSC on the issues of coverage and damages. CNA also appeals the court's judgment, following a bench trial, finding CNA

---

* The Honorable Richard D. Rogers, Senior United States District Judge of the District of Kansas, sitting by designation.

liable under its policy for most of the attorneys' fees and costs incurred by PSC in defending the Waranch action. PSC in turn cross-appeals the district court's denial of attorneys' fees and costs incurred in maintaining this action seeking a declaratory judgment and damages.

## I.

### A. The CNA Policy.

The insurance policy at issue is an Excess Third Party Liability Policy issued by CNA to PSC to provide excess coverage arising from third party bodily injury, property damage or workers compensation liability. The policy was attached as a "following form" to a Lloyd's of London renewal policy effective from December 31, 1973, to December 31, 1974. The Lloyd's renewal policy provided indemnity for 30% of $500,000 per covered loss, in excess of a $100,000 self-insured retention. The CNA excess policy insured the remaining 70% of any covered loss. Both policies contained the following insuring provisions:

1. To indemnify the Assured for any and all sums which they, the Assured, shall be legally liable to pay and shall pay as damages, direct or consequential, and/or expenses, as more fully defined by the term "ultimate net loss", on account of personal injuries and/or property damage caused by or growing out of each occurrence arising out of or due wholly or in part to the conduct of the Assured's business and/or act or omission of the Assured's agents and/or employees and/or contractors and/or subcontractors and/or public authorities when acting for the Assured.

(a) The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which results in personal injury or property damage.

(b) The term "personal injuries" wherever used in this contract shall mean bodily injuries and/or disease and/or death including mental injury, mental anguish, shock, sickness, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

Principal Brief of Appellant, App. 1 at 0022.

### B. The Waranch Action.

The Waranch action against PSC was filed in May 1977. In their complaint, the plaintiffs (Mr. Waranch and his partner) alleged that during the policy period, PSC breached a contract with them by failing to provide natural gas service to a mobile home park they were then constructing, and that the failure to provide such service constituted common law discrimination and an unlawful statutory preference in violation of Colorado Revised Statutes § 40–3–106 (1973). Plaintiffs sought compensatory damages, including lost profits of $3,000,000 and punitive damages of $2,000,000.

In July 1977 PSC's attorney, Mr. Bryans, notified Lloyd's of the suit by a letter. With regard to coverage, Mr. Bryans stated:

I expect there may be some argument over whether or not Public Service Company is covered under its excess policies in this action, but I did want to put you on notice in any event.

Principal Brief of Appellant, App. 1 at 0109.

In April 1980 the state trial judge granted partial summary judgment in favor of PSC on Waranch's contract claim. The judge also stayed the state court action, ordering the Waranch plaintiffs to exhaust their administrative remedies with the Colorado Public Utilities Commission (PUC) first. The PUC concluded that PSC had discriminated against the Waranch plaintiffs and other mobile home park owners in furnishing gas service in 1974. Principal Brief of Appellant, App. 1 at 0081–0083. However, before issuance of PUC's order, the state district judge set a jury trial on the remaining issues of common law discrimination and unlawful statutory preference.

In May 1983 the jury returned a general verdict against PSC, awarding the Waranch plaintiffs $300,000 in compensatory damages

and $150,000 in punitive damages. Shortly thereafter the parties settled the Waranch litigation for $328,000 paid by PSC.

## C. The Coverage Dispute.

In a letter to CNA's counsel in July 1983, PSC's attorney, Mr. Flanagan, indicated that the $328,000 settlement represented the jury's compensatory award plus the Waranch plaintiffs' out-of-pocket expenses in the Waranch litigation, not including attorneys' fees. Principal Brief of Appellant, App. 1 at 0111–0113. Mr. Flanagan stated: "I will be discussing this matter with my client [PSC] and determine whether it wishes to pursue the coverage issue with you." *Id.*

In a letter to Lloyd's agent Mendes & Mount in September 1983, PSC requested reimbursement from Lloyd's and CNA of $382,583.77, the purported excess covered loss over PSC's $100,000 self-insured retention, including both the settlement and cost of defense in the Waranch action. Principal Brief of Appellant, App. 1 at 0092. On October 6, 1983, Mendes & Mount denied the claim in writing. *Id.* at 0114–0115.

## D. The Insurance Coverage Litigation.

In August 1986 PSC filed this suit for a declaratory judgment and damages against Lloyd's and CNA, alleging breach of the insurance contract. PSC sought a determination that the policy covered the settlement of the Waranch litigation, plus PSC's litigation costs, including attorneys' fees associated therewith. Shortly thereafter PSC settled its claim against Lloyd's, leaving CNA as the sole defendant.

In October 1986 CNA sought discovery from PSC, including all documents relating to the Waranch action. CNA also served document requests on Kelly, Stansfield & O'Donnell, the law firm that had represented PSC in the Waranch action, demanding all documents relating to the Waranch action, including invoices, bills and other documents reflecting attorney time or fees incurred in connection with the litigation.

In January 1987 PSC filed a motion for summary judgment in the instant case, arguing that as a matter of law, coverage existed under the CNA policy for its Waranch settlement and litigation expenses and that no genuine issue of material fact existed as to the amount of insured loss, including attorneys' fees. In its response, CNA argued that (1) the Waranch action was not an "occurrence" within the meaning of the policy, (2) triable issues of fact existed concerning damages to which PSC was entitled under the policy, and (3) triable issues existed concerning CNA's defense of waiver of coverage. CNA also noted that it had outstanding discovery requests relevant to both coverage and damages and that discovery could establish additional issues of fact for trial.

The district court denied PSC's motion for summary judgment as to damages but granted it as to coverage, stating:

[T]he language of the . . . policy appears to be sufficiently clear that the Court can conclude as a matter of law that it covers this incident. The policy says the following: "The term 'occurrence' wherever here used shall mean an accident or a happening or event or a continued or repeated exposure to conditions which results in personal injury or property damage."

Contrary to some of the cases which have been cited by Defendant [CNA] and argued by Defendant which talk about accident which have specific clauses which rule out intentional discrimination—I have seen such policies—this one does not. It says, "accident or happening or event," which is certainly pretty broad, "resulting in personal injury or property damage." And then in fact we do have another definitional term which talks about personal injury and which does say personal injury covers; and then it lists many things, including discrimination.

Principal Brief of Appellant, App. 2 at 0266.

Meanwhile CNA had noticed the depositions of two members of the Kelly, Stansfield & O'Donnell firm who had been involved in defending PSC in the Waranch action. PSC moved for protective orders shielding PSC from CNA's deposition notices. In response, CNA argued that the requested depositions might uncover evidence relevant to the coverage and damages issues raised by PSC in

its pending motion for summary judgment and thus were integral to CNA's defense.

The discovery motions were heard by the magistrate and taken under advisement. However, the magistrate's ruling was not issued until after the August 1987 hearing on PSC's motion for summary judgment, which resulted in partial summary judgment for PSC on the coverage issue. In his ruling on the discovery issues, the magistrate limited CNA's discovery to items relating to damages, the only remaining issue following the partial summary judgment ruling on the coverage issue.

After further discovery on damages, PSC filed a second motion for summary judgment as to the damages, including attorneys' fees, incurred by it in connection with the Waranch litigation. The district court granted PSC's motion as to the $328,000 paid by PSC in the settlement of the Waranch litigation.[1] The court also agreed with PSC that the CNA policy covered attorneys' fees incurred in defending the Waranch litigation, but concluded that summary judgment would be denied as to attorneys' fees and expenses relating to the PUC administrative proceedings. An evidentiary hearing was set on those matters for October 4, 1990. *Id.* at 0246.

The issue of reasonable attorneys' fees was tried to the district court in the October 1990 hearing. After reviewing the evidence and hearing the testimony of PSC's experts, the judge concluded that fees and expenses totaling $152,996.64 were reasonable. Adding this amount to the $328,000 already awarded to PSC, and deducting PSC's $100,000 retention and Lloyd's 30% share of coverage, the judge entered judgment for PSC in the amount of $459,477.17 (including prejudgment interest of 8% per annum from the date of demand in 1983). *Id.* at 0248–0251, 0253. The judge denied PSC's post-trial motion for attorneys' fees incurred by PSC in prosecuting the instant coverage suit against CNA. Appellee's Supp.App. 2 at 0163–0166.

## II.

In its appeal, CNA makes four principal arguments. First, it claims that its insurance policy does not cover PSC's defense and settlement of the Waranch litigation. Second, CNA insists that the evidence before the district court on summary judgment created a triable issue of fact as to its defense of waiver of coverage. Third, CNA argues that the district court erred in granting partial summary judgment on the coverage issue before all outstanding discovery on that issue had been completed, including discovery pertaining to CNA's waiver defense. Finally, CNA contends the district court's award of attorneys' fees and expenses was unsupported by the evidence and should not have included legal expenses incurred in connection with the PUC proceedings because such expenses are not covered under the CNA policy. Part IV of this opinion will treat PSC's cross-appeal in which PSC claims the district court erred in refusing to award the fees and expenses incurred by PSC in the present coverage case.

### A. The Coverage Issue Under the CNA Policy.

As noted, the CNA policy provides coverage for liability arising from an "occurrence," defined as "an accident or happening or event ... which results in personal injury or property damage." Principal Brief of Appellant, App. 1 at 0022. In the summary judgment ruling, the district court held that the insuring provisions provide coverage for the Waranch action against PSC as a matter of law, thus creating a duty on the part of CNA to pay the cost of PSC's defense in the Waranch action and to indemnify the company for the amount paid in settlement of it. The district court thus rejected CNA's claim that the language of the policy excludes coverage for intentional discrimination.

We review the district court's grant of summary judgment *de novo*, construing all facts and reasonable inferences in a light most favorable to the nonmoving party. *Ea-*

---

1. While there was a question raised below about the reasonableness of the settlement cost of $328,000, Principal Brief of Appellant, App. 2 at 0245, on appeal CNA does not raise an issue as to the *amount* paid in the settlement, although it does dispute the recoverability under the CNA policy of the settlement payment as a whole.

*ton v. Jarvis Prods. Corp.,* 965 F.2d 922, 925 (10th Cir.1992); *Anderson v. Dept. of Health & Human Services,* 907 F.2d 936, 946–47 (10th Cir.1990). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Citing *Reed v. United States Fidelity & Guaranty Co.,* 176 Colo. 568, 491 P.2d 1377, 1380 (1971), *Hartford Fire Insurance Co. v. Karavan Enterprises, Inc.,* 659 F.Supp. 1075, 1076 (N.D.Cal.1986), and *St. Paul Fire and Marine Ins. Co. v. Campbell County School Dist. No. 1,* 612 F.Supp. 285, 287 (D.Wyo. 1985), CNA contends that the Waranch action did not result from an "accident or happening or event" within the meaning of the CNA policy because the action arose out of intentional conduct by PSC, *i.e.* the calculated business decision to discriminate against mobile home parks in providing natural gas service. CNA points out that the Waranch jury imposed punitive damages against PSC, thus implicitly finding that PSC willfully and intentionally discriminated against the Waranch plaintiffs in violation of C.R.S. § 40–3–106.[2]

■ We are not persuaded by CNA's analysis or authorities on the coverage issue. The proper interpretation of the CNA policy is governed by Colorado contract and insurance law. *Broderick Inv. Co. v. Hartford Acc. & Indemn. Co.,* 954 F.2d 601, 605 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992). Under Colorado law, the policy terms are interpreted according to their plain and ordinary meaning; if ambiguous, they will be construed in favor of the insured, PSC. *Hecla Min. Co. v. New Hampshire Ins. Inc.,* 811 P.2d 1083, 1090–91 (Colo.1991); *Kane v. Royal Ins. Co. of America,* 768 P.2d 678, 683 (Colo.1989). Applying Colorado law to the insurance provisions in CNA's policy, we hold that there was coverage here, requiring both defense and indemnity to PSC as was held by the district court.

In our view, CNA's interpretation of the relevant policy language conflicts with the applicable rules of construction. Nothing in the CNA policy limits its coverage to damages caused by unintentional or accidental conduct. On the contrary, *in addition to* providing indemnity for damage resulting from "accident[s]," the policy provides indemnity for liability caused by any "happening" or "event" not otherwise excluded. This policy thus differs from those in *Reed, Hartford* and *St. Paul,* relied on by CNA, because coverage is not limited to "accident[s]" or damages "neither expected nor intended" by the insured. Instead, the policy covers separately any non-excluded "happening or event." Without addressing the meaning of the term "happening," we conclude that the term "event" is reasonably susceptible to an interpretation that includes intentional conduct.

It is true, as CNA points out, that *Black's Law Dictionary* (6th ed. 1990) in one place indicates that an "event" is "[d]istinguished from an act in that an act is the product of the will whereas an event is an occurrence which takes place independent of the will such as an earthquake or flood." *Id.* at 555. While this isolated statement may seem to support an interpretation of the term "event" that excludes intentional conduct, a closer look at the relevant authorities shows variations and considerable ambiguity in the way the term has been used and understood.

In addition to the language quoted above, *Black's Law Dictionary* describes the term "event" as "[t]he consequence of *anything;* . . . that in which an action . . . terminates." *Id.* at 554–55 (emphasis added). The latter, more inclusive, definition comports better with definitions found elsewhere, including *Webster's Third New International Dictionary* 788 (1981) ("event" includes "something that happens," "ACTIVITY", and "the outcome or consequence of anything"), *Webster's New Collegiate Dictionary* 392 (1979) ("event" includes "something that happens", and "a social occasion or activity"), and *The American Heritage Dictionary* 635 (3d ed. 1992) ("event" includes "[s]omething that

---

2. See Appellee's Supp.App., Vol. I at 91 (instructing jury that it may award a reasonable sum of punitive damages if it finds that PSC's conduct was "willful", *i.e.* "voluntar[y] and intentional[ ]").

takes place", "[a] social gathering or activity", and "[t]he final result; the outcome").

We note further that the context in which the term "event" appears in the CNA policy indicates that the term was intended to encompass intentional conduct. "The context does not suggest that the term 'event' is synonymous with 'accident'—and therefore simply redundant—since it appears in a definition purporting to provide additional coverage." *United Pacific Ins. Co. v. McGuire Co.*, 229 Cal.App.3d 1560, 1565, 281 Cal.Rptr. 375 (Cal.1991), *rev. denied* (1991). In *United Pacific*, the court concluded that "[t]he word has no connotation of fortuity; under any accepted usage, it obviously embraces intentional conduct." 229 Cal.App.3d at 1565, 281 Cal.Rptr. 375. Similarly, in *Save Mart Supermarkets v. Underwriters*, 843 F.Supp. 597, 605 (N.D.Cal.1994), the court construed the term to include intentional sex discrimination in the employment context.

In short, because the term "event" is reasonably susceptible to the interpretation advanced by PSC, that interpretation controls for purposes of determining potential coverage in this case. *Hecla*, 811 P.2d at 1090–91 (ambiguities in policy language must be resolved in insured's favor); *see also Sims v. Sperry*, 835 P.2d 565, 570 (Colo.App.1992) (observing existence of divergent interpretations of term "created" and adopting interpretation most favorable to insured), *cert. denied* (Colo. Aug. 31, 1992). Had CNA intended to exclude intentional conduct from the definition of "occurrence", it could have done so when the parties entered into the insurance contract. CNA could have incorporated the same kinds of limiting provisions discussed in *Reed, Hartford* and *St. Paul, supra*, or it could have omitted any reference to "happening or event." Having failed to do so, CNA cannot escape liability by insisting on an interpretation of the broad policy language that is neither supported nor compelled by the ordinary meaning of the relevant terms. *See Worsham Construction Co., Inc. v. Reliance Ins. Co.*, 687 P.2d 988, 991 (Colo.App.1984) (fact that "[t]he intent to exclude [particular] damage from coverage could have been clearly expressed but ... was not" supports finding of coverage).

Finally, we note that CNA's position is undermined by insuring provision 1(b), quoted in Part I–A of this opinion. There, "personal injuries" are defined as including, *inter alia*, "false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination...." Defining personal injuries growing out of an "occurrence" as including false arrest, false imprisonment, and malicious prosecution is surely not consistent with CNA's position that an "occurrence" does not include intentional conduct. The Colorado courts have recognized that the latter three terms involve intentional acts.[3] Thus while the conduct of Public Service here would appear to be deliberate discrimination and intentional conduct, we hold that it is within the broad coverage of CNA's policy.

On the coverage issue, CNA on appeal makes an additional brief contention. CNA argues that there is no coverage because "it has been held that a contract of insurance to indemnify a person for damages resulting from his own intentional wrong is void as against public policy, and that the courts will not construe a policy to provide such coverage. *Industrial Sugars, Inc. v. Standard Accident Insurance Co.*, 338 F.2d 673, 676 (7th Cir.1964)." Principal Brief of Appellant at 19.

We decline to consider this additional argument made by the statement quoted above. Although PSC does not argue that CNA failed to make the public policy argument in the district court, we note that the record indicates no assertion of this theory there, either in CNA's summary judgment

---

3. "[T]o confine one *intentionally* without lawful privilege and against one's consent within a limited area for any appreciable time, however short, constitutes the tort of false imprisonment." *Blackman for Blackman v. Rifkin*, 759 P.2d 54, 59 (Colo.App.1988) (citing I F. Harper & F. James, *The Law of Torts*, § 3.7 (O. Gray 2d ed. 1986)) (emphasis added). Complaint for false arrest and imprisonment alleges an intentional tort. *Havens v. Hardesty*, 600 P.2d 116, 118 (Colo.App.1979). Malicious prosecution "is an intentional wrongful prosecution without just cause or excuse." *McIntosh v. City and County of Denver*, 98 Colo. 403, 55 P.2d 1337, 1338 (Colo.1936).

brief or at the summary judgment hearing. Moreover, no mention of such an argument was made in the district judge's order or remarks. "The failure to raise the issue with the trial court precludes review except for the most manifest error.... [Appellant] offers no reason why we should grant an exception to the general rule here, and, after reviewing the record, we believe no basis for an exception is present." *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991). *Accord Petrini v. Howard*, 918 F.2d 1482, 1483 n. 4 (10th Cir.1990) ("A federal court, as a general rule, will not reverse a judgment on the basis of issues not presented below."); *Lone Star Steel v. United Mine Workers of America*, 851 F.2d 1239, 1243 (10th Cir.1988) ("Ordinarily, a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory.").[4]

In sum, we hold that the district court was correct in determining that CNA's policy afforded coverage and obliged CNA to defend and indemnify PSC in connection with the Waranch litigation.

### B. The Claim of Waiver of Coverage by PSC.

In its opposition to PSC's motion for summary judgment, CNA presented evidence purportedly creating triable issues of fact as to waiver of coverage by PSC.[5] CNA introduced a July 25, 1977, letter from PSC's attorney, Mr. Bryans, to Lloyd's agent Mendes & Mount, notifying the insurer of the Waranch action. In part the letter stated that "I expect there may be some argument over whether or not Public Service

Company is covered under its excess policies in this action...." Principal Brief of Appellant, App. 1 at 0109. CNA also introduced a telephone notation written by counsel for CNA, Mr. Brandt, summarizing a conversation with counsel for PSC, Mr. Bryans, on May 20, 1980. The notation stated:

> 5/20/80 I called Dick Bryans—Case has been taken over by Jim Tarpey but he told me that they had filed another motion for summary judgment with the [court] and that the [court] finally denied all claims except for civil discrimination and that has been sent to the Public Utilities Commission for further attention. Mr. Bryans stated that was the *only claim left* and that was *not covered under the policy* so we would *not be involved.* He did not want to send me anything in writing because he did not want to put himself in a position of telling us we could close our file. He suggested that I check back with him in Sept. since case has not yet been disposed of. I don't feel HO [Home Office] will allow me to close yet. Will diary for Sept.

*Id.* at 0110 (emphasis in original). In addition, CNA introduced a July 13, 1983, letter to Lloyd's agent, Mendes & Mount, in which PSC's counsel, Mr. Flanagan, stated that "I will be discussing this matter with my client [PSC] and determine whether it wishes to pursue the coverage issue with you." *Id.* at 0111–0113.[6] Finally, CNA contends that its waiver defense is supported by the fact that CNA did nothing to pursue its claim between an October 6, 1983, letter from Lloyd's to PSC's Claims Director—stating that "[a]fter

---

**4.** Similar attempts to erect new coverage barriers for the first time on appeal have been rejected, *e.g., Ohio Cas. Ins. Co. v. Bazzi Const. Co., Inc.*, 815 F.2d 1146, 1149 (7th Cir.1987), as have attempts to inject new public policy arguments not presented to the district court. *E.g., F.D.I.C. v. Kansas Bankers Sur. Co.*, 963 F.2d 289, 293 (10th Cir.1992) ("If [appellant] did not present the question of whether public policy disallows the enforcement of [a particular insurance contract provision] to the district court '[the question] is not properly before us.' ") (brackets in original and added) (quoting *Hokansen v. United States*, 868 F.2d 372, 378 (10th Cir.1989)); *Burak v. General American Life Ins. Co.*, 836 F.2d 1287, 1291 n. * (10th Cir.) ("The record on appeal does not indicate that the district court was

asked to [decide] whether the [policy] endorsement at issue was inconspicuous so as to mislead consumers and thus violate public policy. Accordingly, we do not reach the issue."), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 56 (1988).

**5.** Waiver was one of CNA's affirmative defenses.

**6.** In response to the foregoing letter, Mr. McCullen of Mendes & Mount wrote back on October 6, 1983, requesting that PSC withdraw its claim because Lloyd's and CNA had never been requested to authorize the involvement of excess funds in the Waranch settlement. *Id.* at 0092.

further study and reflection [PSC] might consider withdrawal of this claim," *id.* at 0115,[7]—and the spring of 1986. Principal Brief of Appellant at 22.

■ We feel that the district judge properly held that the evidence introduced by CNA failed to create a triable issue of fact as to waiver of insurance coverage by PSC. CNA had the burden of proof on the waiver issue. *See Air Products & Chemicals, Inc. v. Louisiana Land and Exploration Co.*, 867 F.2d 1376, 1379 (11th Cir.1989); *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 300 (2d Cir.1987).[8] It is true that waiver and estoppel are generally issues of fact, but CNA had to introduce sufficient evidence for a reasonable jury to find "the voluntary abandonment or surrender by [PSC] of a right known by [it] to exist, with the intent that such right shall be surrendered and [PSC] be forever deprived of its benefits." *Roderick v. City of Colorado Springs*, 193 Colo. 104, 563 P.2d 3, 5 (1977).

The evidence of CNA on the waiver issue would not support a finding that PSC voluntarily abandoned a known right to coverage with the intent that such right be surrendered. At best, the evidence shows that PSC recognized that coverage was questionable and a potential subject of disagreement, and that PSC delayed for some time the assertion of its claim.[9] However, the mere statement that there may be argument over coverage does not, without more, estop an insured from asserting coverage. *See Dryden v. Ocean Accident & Guarantee Corp., Ltd.*, 138 F.2d 291, 294–95 (7th Cir.1943) (insured's letter acknowledging coverage disagreement and indicating intent not to press large claims of this kind now does not estop insured from later asserting coverage for such claims). *See also Newcastle County v. Hartford Acc. and Indem. Co.*, 673 F.Supp. 1359, 1364 (D.Del.1987) (rejecting as evidence of waiver an insured's risk manager's statement that risk was excluded from coverage, noting that he was a lay person and that he gave no explanation for his conclusion). Moreover, the record is devoid of evidence indicating an intent on the part of PSC to relinquish its rights under the CNA policy. Indeed, the relevant evidence tends to show a contrary intent. For example, according to Mr. Brandt's memorandum of his telephone conversation with counsel for PSC, Mr. Bryans, quoted above, the latter expressly stated that "he did not want to put himself in a position of telling [CNA] we could close our file." Principal Brief of Appellant, App. 1 at 0110.

In short, CNA's waiver defense, on which CNA bore the burden of proof, was supported at best by a "scintilla of evidence" insufficient for a fair-minded jury to reasonably find for CNA on the waiver issue. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 (noting that a mere "scintilla of evidence" is insufficient to withstand summary judgment).

7. This October 6, 1983, letter from Lloyd's to PSC's Claims Director responded to a September 15, 1983, letter from the PSC Claims Director and attachments to it. That letter said in part that "the amount due as reimbursement to Public Service Company is $382,583.73," and "Thank you for your cooperation in the expedition of the reimbursement amount noted above." Principal Brief of Appellant, App. 1 at 0092. The attachments listed total expenditures by PSC on the Waranch case of $482,583.73, and then noted that less "Retention" (the self-insured portion), the total due PSC was $382,583.73. *Id.* at 0094.

8. "The burden of defendant [insurer] was to show that it had a ground of defense fairly arguable and of a substantial character." *Robson v. American Casualty Co.*, 304 F.2d 656, 658 (7th Cir.1962). Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Consequently, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

9. The remark quoted above from the July 25, 1977, letter from PSC's attorney to Lloyd's agent saying, in part, that some argument over coverage was expected, could not, in context, support an inference of waiver. The first paragraph of the letter stated that the summons and complaint in the Waranch case were enclosed, thus giving notice of the suit to the insurer. The last paragraph of the letter also said that Mr. Bryans (the writer of the letter and counsel for PSC) was "enclosing a copy of our Answer for your information." Principal Brief of Appellant, App. 1 at 0109.

Accordingly, the district court did not err in rejecting CNA's waiver defense as a matter of law in its summary judgment ruling.

### C. CNA's Claim of Error in the Judge's Not Compelling Discovery Before Entry of Summary Judgment on Coverage.

 CNA contends that the district court should not have ruled on PSC's motion for summary judgment before allowing CNA to conduct additional discovery relating to coverage, including its affirmative defenses, and damages. CNA says that by entering summary judgment on coverage before granting relief on its motions for protective orders and its motion to compel discovery, the district court failed to exercise its discretion and unfairly prejudiced CNA. CNA relies principally on *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1518–19 (9th Cir. 1987). Principal Brief of Appellant at 23–25.

In *Garrett* the Ninth Circuit reversed a summary judgment where the trial judge had granted judgment without first determining the merits of plaintiff Garrett's pending discovery motion. The Ninth Circuit held that Garrett's pending discovery motion satisfied the Fed.R.Civ.P. 56(f) requirement of an affidavit. The rule provides that where it appears from affidavits of a party opposing a summary judgment motion that the party cannot "for reasons stated[,] present by affidavit facts essential to justify the party's opposition," the court may refuse the application for summary judgment or order a continuance to permit affidavits to be obtained, or depositions to be taken, or discovery to be had, or may make such other order as is just. The *Garrett* opinion held the discovery motion, already pending there, satisfied Rule 56(f) by making clear the information sought—personnel records of named persons to show disparate treatment.

We are satisfied that the showing made here by CNA is clearly different from that made in *Garrett* where the specific need for designated records was shown by the pending discovery motion. Here, CNA filed no Rule 56(f) affidavit below. Moreover, the portions of the record relied on by CNA relating to the waiver defense make no showing of specific evidence expected to be obtained by CNA. We have examined CNA's Combined Response to PSC's motions for protective orders respecting depositions and documents, and CNA's Motion to Compel Discovery, Principal Brief of Appellant, App. 1 at 0144–0156, and the transcript of the hearing on the motion for summary judgment where CNA's arguments on discovery were reiterated. Principal Brief of Appellant, App. 2 at 0255–0269. CNA did not develop in its pleadings or argument a showing of reasons sufficient to defeat the entry of summary judgment on coverage.

We have observed that "[t]here is no requirement in Rule 56, Fed.R.Civ.P., that summary judgment not be entered until discovery is complete." *Weir v. Anaconda Co.,* 773 F.2d 1073, 1081 (10th Cir.1985). *Accord Brown v. Chaffee,* 612 F.2d 497, 504 (10th Cir.1979) ("Plaintiff argues on appeal that summary judgment cannot be granted before discovery is had. There is no such requirement in Rule 56"). We are persuaded that here CNA did not make a proper showing for the granting of a continuance in compliance with Rule 56(f), "explaining why [the company] cannot present facts to oppose the motion." *Dreiling v. Peugeot Motors of America, Inc.,* 850 F.2d 1373, 1376 (10th Cir.1988). In *Dreiling,* we noted that

> [a]lthough the Supreme Court has held that, under Fed.R.Civ.P. 56(f), "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986), this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion.

*Id.* at 1376. We are not persuaded that CNA made such a showing of inability to oppose the summary judgment motion on coverage without discovery sought.

We note that CNA based a major part of its objection to the entry of summary judgment on the need for discovery pertaining to the billings by counsel for PSC. Those billings were relied on by PSC as the basis of its claim for reimbursement for fees and costs,

and thus were at the heart of the damages issue. However, the trial judge did not enter a summary judgment ruling on damages; instead, as CNA's brief notes, further discovery on damages was in fact allowed after the summary judgment ruling. Principal Brief of Appellant at 24 n. 7. Moreover, while CNA also complains of the denial of discovery which it says was relevant to CNA's affirmative defense of waiver, Principal Brief of Appellant at 23, CNA indicates no specific type of evidence that would have been probative of waiver of coverage under the standard for proof of such waiver.

In sum, we are persuaded that no reversible error has been demonstrated by CNA with respect to the entry of summary judgment on coverage before additional discovery was allowed.

## III.

### The Award of Attorneys' Fees and Costs Incurred by PSC in the Waranch Suit and the Colorado PUC proceeding.

Following a bench trial on damages, the district judge awarded PSC final judgment for $459,477.17 with interest from entry of judgment at 7.78% per annum. This included 70% of the Waranch settlement plus 70% of most of the attorneys' fees and costs incurred by PSC in the defense of the Waranch case and the proceedings before the Colorado PUC, less PSC's $100,000 self-insured retention. CNA argues that the award was in error because (1) PSC was not entitled to reimbursement of any fees or costs incurred in the PUC proceedings; and (2) PSC failed to meet its burden of proving the reasonableness of its attorneys' fees and costs in the Waranch suit and the proceedings before the Colorado PUC.

### A. Recoverability of Attorneys' Fees and Costs in the Colorado PUC Proceedings.

■ CNA argues that because the Colorado PUC proceedings were administrative and could not result in a determination of liability

(Principal Brief of Appellant, App. 1 at 0073–74), attorneys' fees and costs incurred by PSC therein are not covered by CNA's policy, citing *Reisner v. Vigilant Ins. Co.*, 138 Misc.2d 542, 524 N.Y.S.2d 602 (N.Y.Sup.Ct. 1987). There it was held that a malpractice insurance policy covering "any suit ... alleging liability" for specified conduct did not provide coverage for attorneys' fees and costs incurred in disciplinary proceedings before an administrative board.[10]

We are in agreement with the ruling of the trial judge. Unlike the malpractice policy in *Reisner,* the CNA policy at issue here does not limit coverage to "suit[s] ... alleging liability." Instead, the policy obligates CNA to indemnify PSC for "expenses ... on account of personal injuries and/or property damage caused by or growing out of each occurrence." Principal Brief of Appellant, App. 1 at 0022. Covered expenses include "all sums paid as salaries, wages, compensation, fees, charges and law costs, ... expenses for ... lawyers ... and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder." *Id.* at 0024.

We are persuaded that PSC's attorneys' fees and costs in the Colorado PUC proceedings constituted "expenses," as the term is broadly defined in the CNA policy, arising out of a covered occurrence. The PUC proceedings were instituted by the parties (the Waranch plaintiffs and PSC) as required by the federal district judge handling the Waranch case. At the time she granted summary judgment for PSC on the contract claim, she also stayed the balance of the action pending factual determinations by the Colorado PUC and exhaustion of administrative remedies there. Appellee's Supp.App. 1 at 00063–66. Those PUC proceedings thus necessarily arose out of and were necessitated by the circumstances giving rise to the Waranch action. The resulting attorneys' fees and costs incurred by PSC in the administrative proceedings therefore resulted from a covered occurrence under the CNA policy

---

10. Some courts have reached contrary results concerning coverage of administrative proceedings based on the word "suit." *See, e.g., A.Y.*

*McDonald Industries, Inc. v. Ins. Co. of North America,* 475 N.W.2d 607, 627–28 and nn. 9–10 (Iowa 1991).

and are proper for indemnification thereunder.

## B. The Reasonableness of PSC's Attorneys' Fees and Costs in the Waranch Litigation.

The right to recover attorneys' fees is substantive and therefore determined by state law in diversity cases. *King Resources Co. v. Phoenix Resources Co., (In re King Resources Co.),* 651 F.2d 1349, 1353 (10th Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 370, 70 L.Ed.2d 195 (1981). In a Colorado breach of trust action, an award of attorneys' fees was held to be within the discretion of the trial court; the award should make the injured party whole and the court may consider the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar cases. *Heller v. First National Bank of Denver, N.A.,* 657 P.2d 992, 999–1000 (Colo.App.1982); *see also Hartman v. Freeman,* 197 Colo. 275, 591 P.2d 1318, 1322 (1979) (same factors applied to statutory award of attorneys' fees). The award should be based on consideration of the lodestar amount—the amount representing the number of hours reasonably expended multiplied by a reasonable hourly rate. *Dahl v. Young,* 862 P.2d 969, 973 (Colo.App. 1993).

In federal proceedings, the "district courts [should] articulate specific reasons for fee awards to give us an adequate basis for review." *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983).[11] In that appellate review, findings of underlying questions of fact are subject to the clearly erroneous standard of review and an attorneys' fee award will be upset on appeal only if it represents an abuse of discretion. *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986).

The trial judge's findings and conclusions on fees and costs found the hourly rates for attorneys who worked on the War-

anch case were reasonable, and that their reasonableness was not contested. Findings of Fact and Conclusions of Law at 2. The judge found that PSC's witnesses, Lyons and Flanagan, who testified on such fees, were credible. *Id.* Three small deductions were made by the judge ($815.00 billed on defense of the Waranch case; $195.00 billed for an attorney to hear the closing argument; and $212.50 for a 1981 overcharge). *Id.* The judge found that 1,575 hours were reasonably spent on the Waranch case defense. Principal Brief of Appellant, App. 2 at 0249–50. This is the matter in controversy on appeal as the rates for the attorneys are not challenged here.

Applying a lodestar approach, the judge concluded that $121,684.25 of the adjusted fees were reasonable; he also said this was confirmed by the totality of the circumstances test and application of the A.B.A.Code of Professional Responsibility. He applied a PSC formula for calculating total damages and arrived at a final judgment on damages of $459,477.17.

In its brief, CNA points to various legal charges for which no specific task description appears in billing statements introduced to the court below. Principal Brief of Appellant at 31–32. While the absence of specific task descriptions may preclude an award of fees in cases arising under a federal fee-shifting statute (*e.g., Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983) (noting that in order to justify fee award under federal fee-shifting provision, district court "must carefully scrutinize [attorney billings], much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done")), the same degree of specificity is not required in the context of contractual fee awards. "Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *Western States Me-*

---

11. However, because this case involves an award of attorneys' fees to enforce a contractual obligation, the intense scrutiny required in fee awards under the federal Civil Rights Act provi-

sions does not apply. *See United States v. Western States Mechanical Contractors,* 834 F.2d 1533, 1547–48 (10th Cir.1987).

*chanical Contractors*, 834 F.2d at 1548 (expressly declining to apply "[c]lose scrutiny" of *Ramos* in contractual fee award context).

Accordingly, despite the apparent absence of detailed task descriptions relating to some of the time billed by counsel to PSC in the Waranch action, the district court did not err in ordering CNA to indemnify the expenditures for these legal services. PSC introduced testimony indicating that the hours billed did in fact reflect actual Waranch-related work, albeit unspecified, and the district judge found Mr. Flanagan, who testified on these matters, to be credible. Principal Brief of Appellant, App. 2 at 0279–95; *id.* at 0249–50.

CNA also contends the district court erred in awarding certain fees for which PSC purportedly never paid its Waranch counsel, and other fees which allegedly did not relate to the Waranch litigation at all. Principal Brief of Appellant at 33. Regardless of the merits of these claims, we decline to address them to the extent they were not raised below. We do not feel that the trial judge was obligated to comb the evidence before him— consisting of voluminous attorney billing records—to ferret out gaps or inconsistencies in the evidence presented on the fees. Instead, if PSC believed the evidence was somehow deficient, it should have brought the matter to the court's attention.

In sum, we are not persuaded that CNA has demonstrated that the findings of fact were clearly erroneous as to the fee award made for the Waranch litigation, including the Colorado PUC proceedings. With one minor modification we make,[12] we accordingly uphold the fee award.

---

12. We feel the record does not support the court's award of one hour billed to the Waranch case by Mr. Bryans on August 23, 1977 (Principal Brief of Appellant, App. 3 at 0392) and ¼ hour billed by Mr. Bryans on February 6, 1981 (*id.* at 0574, 0590). Neither time entry was shown to have any connection with the Waranch case. Principal Brief of Appellant, App. 2 at 0296–0298. Accordingly, the district court's damage award in favor of PSC will be reduced by $70.00, including $50.00 for Mr. Bryans' time and $20.00 for Mr. Tarpey's time. As so modified, the damage award will be affirmed.

## IV.

### PSC's Request for Fees and Costs Incurred in this Action.

In its cross-appeal, PSC contends that the trial judge erred in denying PSC's motion for attorneys' fees and costs in the instant coverage litigation.[13] PSC distills its cross-appeal arguments by saying that it seeks reimbursement of its coverage litigation expenses in three ways, any one of which supports its right to recover such fees and expenses. The three asserted grounds for recovery are: (1) a "simple and straightforward application of the Lloyd's of London policy"; (2) recovery of consequential damages flowing from the breach of the insuring agreement; and (3) equitable considerations. Reply Brief on Cross–Appeal of Public Service Company of Colorado at 2.

The trial judge denied PSC's motion for fees and costs expended in maintaining this suit for declaratory relief and for damages by an Order of May 1, 1991. Appellee's Supp. App. II at 000163. The judge noted that both sides assumed Colorado law applied and he abided by that assumption. The judge held that Colorado law generally permits such recovery of fees and costs only if an agreement or statute authorizes recovery, citing *Bunnett v. Smallwood*, 793 P.2d 157, 160 (Colo.1990), and *Rhodes v. Copic Ins. Co.*, 819 P.2d 1060 (Colo.App.1991). He rejected the argument for recovery sought on the basis of the insurance policy which, as the judge noted, defines "ultimate net loss" as

the sums for which the Assured actually became liable for personal injury and property damage claims, including consequen-

---

13. PSC brought this action by filing its "Complaint For Declaratory Relief And Compensatory Damages." Principal Brief of Appellant, App. 1 at 0001–04. After the complaint's "General Allegations," asserting diversity and jurisdictional amount and claiming jurisdiction under the 28 U.S.C. § 1332 diversity provisions and under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the complaint averred its "First Claim For Relief (Declaratory Judgment)," alleging that a controversy exists within the contemplation of Fed.R.Civ.P. 57 and 28 U.S.C. § 2201. Then the "Second Claim For Relief (Breach of Contract)" was averred, demanding judgment for "at least $462,060.38."

tial damages, ... and shall also include ... all sums paid as salaries, wages, compensation, fees, doctors, lawyers, nurses, investigators and other persons, and for litigation, settlement, adjustment and investigators and settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's permanent employees.

Appellee's Supp.App. II at 000165. The judge concluded that the fees were not recoverable because PSC's having to sue to enforce its rights under the policy was not a consequence of the "occurrence" of discrimination. *Id.* The judge further concluded that although the policy clearly intends coverage for attorneys' fees arising out of the underlying *Waranch* litigation, there is no such clear intention concerning fees arising out of the instant breach of contract action. *Id.* Finally, the judge said PSC's argument for recovery of the fees on the basis of policy considerations does not justify such an award here, citing *Rhodes* and *Bunnett. Id.*

We agree with the ruling of the trial judge. Colorado has for some time followed the American rule that in the absence of a contractual or statutory basis therefor, attorneys' fees and litigation expenses are generally not recoverable as an item of damages in a contract or tort action. *Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263, 1265 (1974); *Bunnett v. Smallwood,* 793 P.2d at 160–61. Here, we are persuaded that the trial judge correctly held that the contract language does not support an award of attorney's fees and costs in this coverage litigation. We agree that those fees and costs are not a consequence of an occurrence covered by the policy.

There is some uncertainty arising from *Hedgecock v. Stewart Title Guaranty Co.,* 676 P.2d 1208 (Colo.App.1983). There recovery was allowed of attorney fees incurred by the insured holding a title insurance policy. These were the fees expended in the court below by the insured as plaintiff in an action to recover for breach of the title insurance company's policy. Following *Allstate Ins. Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979), *Hedgecock* upheld the plaintiff insured's right to recover the fees expended in the lower court and on appeal which "should have been awarded as being part of the damages for breach of the title insurance company's contract." 676 P.2d at 1210–11. Likewise, PSC argues here that the litigation expenses in this separate action can be awarded as consequential damages due to the insurer's breach of contract. Reply Brief on Cross–Appeal at 4.

We disagree. In *Allstate* the court based its ruling for recovery of the fees sought on the policy language. The policy provided that the insurance company would reimburse the insured for all reasonable expenses "incurred at the company's request." The filing of Allstate's declaratory judgment suit was held to constitute such a "request" and thus the insured's expenses in that suit were recoverable. 597 P.2d at 1052–53. There is no comparable language here.[14]

More recently, the Colorado Court of Appeals in *Rhodes v. Copic Ins. Co., supra,* denied recovery of an insured plaintiff's fees incurred in prosecuting a declaratory judgment suit. That suit sought both declaratory relief that coverage applied and an award of attorney's fees incurred in maintaining the declaratory judgment action. The court followed the "American rule" in conformity with *Bunnett* and *Beebe. Rhodes* distinguished

**14.** PSC also relies on an unpublished order in *Broderick Investment Co. v. Hartford Accident & Indemnity Co.,* 742 F.Supp. 571 (D.Colo.1990), *aff'd on other grounds,* 954 F.2d 601 (10th Cir. 1992). There the trial judge allowed the recovery of fees incurred in a declaratory judgment suit in part on the basis of policy language similar to that in *Allstate Ins. Co. v. Robins.* The *Broderick* case language was that the company would pay "reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any

claim or suit...." Order at 3. In addition, the *Broderick* fee award was based on equitable considerations to restore the insured to the position it would have occupied had the company honored its insurance contract in the first place. *Id.*

The *Broderick* case is distinguishable as to the policy language because the CNA policy here contained no such provision. Moreover the policy argument articulated in *Broderick* has not been adopted by the Colorado Supreme Court. *See Bunnett v. Smallwood,* 793 P.2d at 160–61.

the *Allstate v. Robins* case because it "rested upon specific language contained in the insurance contract and the ruling stands only for the proposition that attorney fees may be recovered as provided under the terms of a contract." 819 P.2d at 1062.

We feel that in the circumstances before us, *Hedgecock* does not apply. There is no contract language here supporting an award of the fees in PSC's suit for declaratory relief and damages. Moreover, we note that in *Rhodes* the suit was for a declaratory judgment and for the fees in defending the malpractice case in prosecuting the declaratory judgment action. The Colorado court said the "Plaintiff's action for declaratory judgment is a statutory rather than an equitable action." 819 P.2d at 1062. The instant suit for declaratory relief and damages we likewise treat as essentially a declaratory judgment suit, and one where the insurance policy lacks language supporting an award of fees and costs for maintaining that declaratory suit. Hence the denial of such fees and costs by the trial judge was proper here.

Lastly PSC argues that equitable considerations support an award of the litigation expenses of PSC in this action. PSC complains of CNA's conduct as delaying the litigation and relies on the court's sanction powers, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). We reject this argument because it was not made below. In the Plaintiff's Memorandum Brief Regarding Attorney Fees, Appellee's Supp.App. II at 000133, *et seq.*, PSC stated that the parties agree that this claim (for fees) is not based on any statute or on any tortious conduct by the insurance carrier; "that this claim arises solely from the insurance agreement (and the public policy implicit in the literal enforcement of these contracts)"; and that the operative insurance contract is the Lloyd's policy. *Id.* at 000133. Accordingly, we decline to consider the argument insofar as it is cast in terms of a request for sanctions. As a claim for relief by PSC based on equitable principles, we are not persuaded to award such fees. PSC's theory was rejected in *Bunnett v. Smallwood*, 793 P.2d at 160–161, and *Rhodes v. Copic Ins. Co.*, 819 P.2d at 1062.

## V.

In No. 90–1320, the summary judgment for PSC on coverage and the judgment on damages, as modified, *see supra* note 12, are **AFFIRMED.** In No. 91–1201, the denial of the expenses and fees incurred by PSC in maintaining the instant case is **AFFIRMED.**